Argued March 7, affirmed April 24, 1968

RAMCO, INC., *Respondent, v.* PACIFIC IN-
SURANCE COMPANY, *Appellant.*

439 P. 2d 1002

*Tom P. Price,* Portland, argued the cause for appellant. On the briefs were Morrison & Bailey, and Thomas S. Moore, Portland.

*Bruce L. Engel,* Portland, argued the cause for respondent. On the brief were Bygi & Engel, Portland.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

SLOAN, J.

This is an action by plaintiff to recover on a policy of products liability insurance issued to plaintiff by defendant for that purpose. Plaintiff is the manufacturer of electric baseboard heaters. When a claim was made against plaintiff for the malfunction of a number of its heaters that had been installed in a motel, defendant denied coverage of the claim. Plaintiff settled the claim and brought this action to recover. Plaintiff's complaint alleged two causes of action; one for the actual loss plus an attorney's fee; the second was for consequential loss of good will and credit. The trial court directed a verdict for plaintiff on its first cause of action and sustained a demurrer to the second cause. Defendant appeals from the ver-

dict and judgment against it. Plaintiff cross-appeals on the second cause of action.

The facts are not disputed. Sixty-nine of plaintiff's heaters were installed in the motel units of a motel in Yakima, Washington. Not long after, when the first extremely cold weather was experienced the heaters failed to produce the heat they were designed to produce. The motel suffered substantial damage as a result. Upon examination of the heaters it was found that they contained defective coils. The cause of the defect could not be definitely determined but it was a fault in plaintiff's manufacture.

The motel made a claim for its damage to plaintiff. Plaintiff promptly submitted the claim to defendant. After some investigation and negotiations between plaintiff and defendant, the latter denied coverage. Plaintiff then settled the claim with the motel and then brought this action.

The crucial question concerns the meaning to be applied to the word "accident" as it appears in the insuring words of the policy.[1] Defendant, of course,

---

[1] Coverage D—Property Damage Liability—Except Automobile

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

"The term 'products hazard' means:

"(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in the company's manual excludes any part of the foregoing, provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending

claims that the events described did not constitute an accident within the meaning of the policy contract. It was not seriously urged that no damage resulted from the event.

Generally, the definition of the word "accident" in our decision in *Finley v. Prudential Ins. Co.*, 1963, 236 Or 235, 388 P2d 21, 4 ALR3d, 1161, would include the events described in this action. The cases that are directly concerned with products liability policies, similar to this one uniformly hold that a loss caused by a defective product can be an accident.

Before proceeding to mention specific cases that have considered the questions presented here it seems appropriate to first quote from 7A Appleman, Insurance Law and Practice, 1962, § 4508, at p 98, in which he states the basic difference between "public liability" coverage and products liability coverage:

"It is apparent that liability under what we ordinarily term 'public liability' coverages can arise fundamentally in three distinct ways. An injury or a loss may result while an activity is in progress, and prior to the completion thereof, either as the result of an act of negligence or an omission. That is what is embraced within the ordinary liability aspect of a public liability policy. But if the operation has been completed, and liability results thereafter either by reason of a defect in merchandise or improper workmanship, that is called 'products liability' or 'completed operations', the protection of which can be purchased for a premium. Neither

machine or any property, other than such container, rented to or located for use of others but not sold;"

The policy itself does not include a definition of the word accident. Some policies do. See, for example, Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co. of N. Y., (CCA 3d, 1960), 281 F2d 538.

type of coverage is intended to supplant the other, nor would the premiums charged be adequate for that purpose."

The third category relates to damage to the product itself.

The language above quoted is not of particular help in applying a meaning to the word "accident" as used in the policy involved. It does reflect that products liability coverage is obtained and premiums are paid for purposes differing from the more common form of public liability insurance. Appleman further notes that there have not been enough products liability insurance cases decided, as yet, to "clarify the constructions applicable thereto." There have been several cases decided that are particularly analogous to the instant case.

The most comparable case is *Bundy Tubing Company v. Royal Indemnity Company,* (CCA 6th, 1962) 298 F2d 151. Bundy was the manufacturer of the kind of metal tubing that is used in concrete floors for radiant heating. Hot water passing through the tubes create the heat. Bundy manufactured some defective tubing that caused losses in various places. Defendant in the case, Royal Indemnity Company, claimed no accident occurred and refused coverage. The court held that "property was damaged by the installation of defective tubing in a radiant heating system which caused the system to fail and become useless. * * * The failure of the tubing in the heating system in a relatively short time was unforeseen, unexpected and unintended. Damage to the property was therefore caused by accident." 298 F2d at p 153.

A case note on the *Bundy Tubing Company v. Royal Indemnity Company* decision at 16 Vand L Rev

240, at 241, states that " 'caused by accident' as used in most products liability policies has been uniformly held to mean any unexpected and unintended event; * * *." The case note reflects that the more serious "difficulty" in the cases is related to the extent of the recovery i.e.: whether or not the manufacturer's cost of repair and replacement of the damaged property is recoverable under a products liability policy. That issue is not involved in the instant case.

In the *Bundy Tubing Company* case the court relied particularly on *Hauenstein v. St. Paul-Mercury Indemnity Co.*, 1954, 242 Minn 354, 65 NW2d 122. *Hauenstein* was concerned with defective building plaster manufactured by plaintiff Hauenstein. The defect in the plaster caused it to shrink and crack after it had been applied to several houses. The court was primarily concerned with deciding whether or not damage which was limited to loss in value of a building was property damage in the sense of damage caused by accident. The court compared this to the loss in value of land caused by depositing foreign substances on the land and held this kind of loss to be property damage. The court also held it was caused by accident, within the meaning of the insurance contract, since that damage was the result of "an unexpected, unforeseen or undesigned happening or consequence from either a known or unknown cause" and was an accident. The same reasoning was applied in *Economy Mills of Elwell, Inc. v. Motorists Mut. Ins. Co.*, 1967, 8 Mich App 451, 154 NW2d 659.

Other like cases with comparable reasoning and results are: *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.*, 1959, 51 Cal2d 558, 334 P2d 881, involving damage caused by defects in the manufac-

ture of doors used in a housing development. The defects caused the doors to sag and to prevent closing. The court held this to be an unexpected event and that it was an accident within the meaning of the policy.

In reaching that conclusion the California court emphasized these considerations which are identical to the instant case:

"The door failures were unexpected, undesigned, and unforeseen. They were not the result of normal deterioration, but occurred long before any properly constructed door might be expected to wear out or collapse. Moreover, they occurred suddenly. It bears emphasis that we are concerned, not with a series of imperceptible events that finally culminated in a single tangible harm * * *, but with a series of specific events each of which manifested itself at an identifiable time and each of which caused identifiable harm at the time it occurred. * * *." (*Citing cases—omitted). *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.,* supra, 51 Cal2d 558, at p 564, 334 P2d 881, at 884.

The same conclusion was reached in *Amer. Employers Ins. Co. v. Knox-Tenn Equip. Co.,* 1963, 52 Tenn App 643, 377 SW2d 573. The damage there was caused by the failure to provide the correct size of a drill bit which was used to install flooring. The floors later buckled because of the use of the wrong drill bit.

The reasoning of the British Columbia Court of Appeals is persuasive to us in *Andrews & George v. Can. Indemnity,* 1951, 1 DLR 180, reversed on other grounds by the Supreme Court of Canada at 4 DLR 690. In that case, the insured was the manufacturer of glue. Some of its glue, that had been defectively made, was used by a plywood maker and resulted in a substandard plywood product. The plywood maker

was forced to sell the plywood at a loss. The glue manufacturer paid the loss and brought the reported action against the named insurance company. The provisions of the policy were similar to those in the instant case. The British Columbia Court of Appeals held that the word "accident" as used in the policy had a special meaning as it applied to the purposes and intent of a products liability policy and that in that instance the policy was intended to cover the kind of loss that had been sustained. Some of the language on this phase of the opinion in the Court of Appeals was criticized in the opinions of the Supreme Court of Canada at 4 DLR 690.

■ However, we prefer the reasoning of the British Columbia Court that the meaning of the word "accident" must be relevant to the kind of product being manufactured by the insured and to the kind of loss that it could sustain by reason of a defect in manufacture. As the British Columbia Court mentioned, in respect to the subject of glue, the hazards to be insured against are the mishaps or unintended consequence that can result from the use of the product. The significance of the British Columbia decision is cited by both Appleman, *supra,* § 4508, and in Hursh, American Law of Products Liability, 1962, § 10.5. The same applies to the kind of heater manufactured by plaintiff. One contemplated hazard would have to be the kind of occurrence that did happen.

■ This is particularly significant in the instant case because there is evidence relative to the intent of the parties as to the coverage to be included. The intent of the parties to the contract of insurance, if it can be determined, is a governing consideration. *Wallace Co. v. State F. M. Auto. Ins. Co.,* 1960, 220 Or 520, 525, **349 P2d 789.**

The undisputed testimony of the president of plaintiff was that when he negotiated for the policy with defendant's agent, that he informed the agent that he wanted coverage for loss sustained by defective products and that the agent agreed to provide such coverage.

■ Defendant did not present any evidence. Plaintiff's evidence relative to intent is not contradicted. This is persuasive that the coverage claimed by plaintiff was contemplated by the parties when the policy issued and that the premiums specifically designated for products liability coverage were intended for that purpose.

■ The rule is uniform and consistent that "if the policy is reasonably susceptible of two constructions, it should be construed most favorably to the policy holder." *Wallace Co. v. State F. M. Auto. Ins. Co.,* *supra,* 1960, 220 Or 520, at p 525. The case note at 19 Vand L Rev at 241, states that the only general rule yet developed by the courts in respect to the infant subject of products liability insurance policies is "that they will be construed most strongly against the insurer." See also, *Hursh,* op cit.

We agree with the trial court that the loss was one covered by the policy.

What has been said decides the several issues argued here by defendant except that on this appeal it argues that plaintiff's settlement with the motel owner was not reasonable. The only evidence on the subject would refute defendant's belated argument.

■ We affirm the trial court's order sustaining a demurrer to plaintiff's second cause of action for the alleged consequential damage of loss of credit and business reputation. Plaintiff's allegation of the damage is nothing more than a bald conclusion from which

it is impossible to tell whether it attempts to allege the action because of a breach of the contract or in tort. No facts are alleged which would justify a decision as to the liability sought to be imposed. See 5 Corbin, Contracts, 1964, § 1007 et seq.

Affirmed.