Argued May 5, affirmed as modified June 23, petition
for rehearing denied July 22, 1971

FOLES, *Respondent and Cross-Appellant, v.*
UNITED STATES FIDELITY & GUARANTY
COMPANY, *Appellant and Cross-Respondent.*
486 P2d 537

*William L. Hallmark,* Portland, argued the cause and filed briefs for appellant and cross-respondent.

*William F. Schulte,* Portland, argued the cause and filed briefs for respondent and cross-appellant.

Before O'CONNELL, Chief Justice, and MCALLISTER, DENECKE, HOLMAN, TONGUE, and HOWELL, Justices.

HOLMAN, J.

This was a proceeding for a declaratory judgment brought to determine whether coverage existed for the death of plaintiff's decedent under the uninsured motorist provision of a policy of automobile liability insurance. The complaint also sought, if coverage existed, a determination of the uninsured motorist's liability, if any, to plaintiff. The court, after trying the case without a jury, adjudicated that both coverage and liability existed and that plaintiff was entitled to a judgment in the sum of $7,500. Defendant appealed.

There is no challenge on appeal to the court's determination of coverage. The principal issues are whether the court erred in finding that the uninsured motorist was negligent and that the decedent was not contributorily negligent.

At about 5:30 on a February evening, the uninsured motorist was driving in a southerly direction on The Dalles-California highway. She was accompanied by her husband, who was sitting on the passenger's side of the front seat. She had her lights on, but there was visibility without them. At a point a few miles north of Klamath Falls, she had just rounded a long, gentle, sweeping curve to the right, on a slight downgrade, when she hit and killed decedent, a young lady, at a point off to the right, or westerly, side of the main

traveled portion of the highway. There was no impairment of visibility. The accident took place on a graveled area which extended back from the highway for a distance of from 24 feet to 30 feet and which was used as a parking place for vehicles whose occupants wished to patronize a restaurant on the opposite, or easterly, side of the highway.

At the place of the accident, both the north- and south-bound traffic lanes were 12 feet in width from the fog line to the center line. On the westerly side of the road, the hard surface extended an additional 9 feet outside the fog line. After the accident, decedent's left boot was found on the gravel at a place 6 feet 2 inches west of the hard surface. Her body lay farther south, 14 feet 10 inches from the edge of the pavement. Tracks which led to where the vehicle sat after the accident left the hard surfaced portion of the highway 102 feet north from where decedent's body lay, and extended a distance of 76 feet beyond the body.

The uninsured motorist could not testify at the time of the trial how far away decedent was when she first saw her. She did testify that when she first saw decedent, decedent was at about the westerly fog line, walking in an easterly direction toward the center of the pavement. She testified that decedent advanced to about the center of the southerly lane of traffic, faced north, and waved her hands over her head; that it was impossible to go to the left because of oncoming traffic; that she could not stop; and that, in the emergency, she chose to drive onto the shoulder of the road behind the deceased. She said she did not see the deceased from the time she left the road until she struck her. There was evidence from other witnesses

that, as the uninsured motorist turned off the highway, deceased turned and ran back on the graveled area.

The trier of the facts could have inferred that the deceased was hit at approximately the location of her left boot, which was the first item belonging to deceased found along the path of the vehicle which led up to the body. This would mean that deceased was approximately 27 feet away from the center of the highway at the time she was hit. A witness who was driving the oncoming vehicle testified that there was about ten feet of room between the center line and the farthest point the deceased advanced as she came out on the road. He also testified that decedent could have been as far as 18 feet from the center line when she was hit.

1. With this sort of testimony, it was within the province of the fact finder to decide, as he did, that a reasonably careful driver would not have hit decedent and that a cause of the accident was the uninsured driver's negligence in failing to control her vehicle properly and in failing to keep a proper lookout. There was no error in finding that the uninsured motorist was negligent.

Contributory negligence was alleged against the decedent in several particulars, only three of which are relevant to this appeal. They are:

1) Standing in a roadway for the purpose of soliciting a ride in a private vehicle;
2) Failing to yield the right of way;
3) Failing to use the left-hand side of the roadway.

Defendant claims the evidence supported each of these allegations and required a finding as a matter of law

both that deceased was negligent and that such negligence was a cause of the accident.

Defendant first contends that decedent was guilty of negligence as a matter of law which was a cause of the accident because she violated ORS 483.218, which states as follows:

> "No person shall stand in a roadway for the purpose of soliciting a ride from the driver of any private vehicle."

2. Defendant also contends that the deceased was negligent as a matter of law which was a cause of the accident because she violated ORS 483.210 (4), which states:

> "Every pedestrian crossing a roadway at any place other than within a marked or unmarked crosswalk shall yield the right of way to vehicles upon the highway * * *."

These two contentions will be discussed together because a person who is on the roadway for either purpose constitutes approximately the same traffic hazard.

It could be found from the evidence that decedent yielded to the uninsured motorist the full hard surfaced portion of the roadway and 27 feet of clearance over-all between where she was hit and the center of the road. It could also be found that there was ten feet of south-bound highway between where the deceased was signaling for a ride and the center line. Defendant claims the uninsured motorist was misled into turning off the main traveled portion of the road by decedent's presence there, despite the fact that decedent may have, at the last second, yielded the main traveled portion. Whether defendant's contention is true is a question of fact. It is our conclusion that there is no basis for finding as a matter of law that

any violation of either statute by deceased was the cause of the accident.

Defendant also contends that deceased was guilty of negligence as a matter of law which was a cause of the accident because she violated ORS 483.220, which provides:

> "Pedestrians, when using any highway outside of incorporated cities, shall use the left-hand side of such highway so as to leave the right-hand side free for vehicles passing in the same direction and for safety in meeting vehicles proceeding in the opposite direction."

The danger which it was the intention of the statute to alleviate is the danger to a pedestrian of being overtaken from his rear by vehicles using the same side of the highway as that upon which he is walking. *Dimick v. Linnell,* 240 Or 509, 511, 402 P2d 734 (1965). There is evidence which indicated that decedent crossed the road from the restaurant on the east side of the highway and walked a short distance southerly on her right-hand, or westerly, side of the road. There is further evidence that she then turned easterly and walked out onto the highway and faced toward the north in the direction from which the uninsured motorist was coming, and signaled the motorist to stop. If such were true, decedent's walking along the highway with her back to the traffic which was using the side of the highway to which she was adjacent was not a cause of the accident and, therefore, not contributory negligence.

3. The defendant next contends, for two separate reasons, that the court erred in admitting evidence of brake repairs on the uninsured motorist's vehicle subsequent to the accident. The trial court did not find

the uninsured motorist guilty of the charge of negligence which related to inadequate brakes. As a result, defendant was not harmed by the introduction of the evidence, regardless of whether error was committed.

4. Defendant's attorney, after being retained, had the uninsured motorist and her husband interviewed and had their written statements taken concerning the facts surrounding the accident. During trial, the court required defendant's attorney to permit plaintiff's attorney to have access to these statements and allowed their use by plaintiff in her attempt to impeach the testimony of the uninsured motorist and her husband. Defendant contends the court erred in so doing, because communications between attorney and client and the work product of the attorney's efforts are privileged. The defendant also contends the court erred when it permitted the plaintiff to introduce as substantive evidence the statement taken by defendant from the uninsured motorist. The defendant contends the statement was hearsay and was not admissible under the declaration against interest exception to the hearsay rule, because the exception operates only if the declarant is not available to testify in court.

It is unnecessary for us to consider the merit of these assignments of error because, if error was committed, we do not believe it to have been prejudicial. Written statements of both witnesses concerning the circumstances surrounding the accident which had been taken by plaintiff were already in evidence. Although objection was made by defendant at the time of the introduction of the uninsured motorist's statement taken by plaintiff, its introduction is not the subject of an assignment of error. The statement of her husband which was taken by plaintiff was received

in evidence without objection by defendant. The witnesses also testified at trial. The only substantial discrepancy between the witnesses' testimony and their written statements taken by plaintiff on the one hand and the written statements taken by defendant on the other, was that both witnesses at trial stated that they did not know how far away the deceased was at the time they first became aware of her; whereas, in the questioned statements, they both said the distance was about 200 feet. The motorist who was going in the opposite direction, and who witnessed the accident, estimated that the uninsured motorist's vehicle was 150 to 200 feet away at the time the decedent signaled her to stop. We do not believe the defendant was prejudiced by the discrepancy. Although defendant claims the use of the statements was prejudicial because plaintiff's case was otherwise very weak, it acknowledges that the statements contained little substantive evidence.

5. Plaintiff sought attorney's fees under the provisions of ORS 743.114 (1), which provides as follows:

> "If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon *any policy of insurance of any kind or nature,* and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, then the plaintiff shall recover as part of his judgment such additional sum as the court may adjudge to be reasonable as attorney fees." (Emphasis ours.)

The trial court declined to award attorney's fees, presumably upon the ground that fees were not allowable under the statute in a declaratory judgment proceeding. Plaintiff cross-appealed from this ruling.

The requisite proof of loss and lapse of time required by the statute were met.

Since the trial of the matter under consideration, this court decided the case of *Hardware Mut. Cas. v. Farmers Ins.*, 256 Or 599, 474 P2d 316 (1970), which held that an insured who was a defendant in a declaratory judgment proceeding brought to determine coverage and who counterclaimed for recovery under the policy was entitled to attorney's fees under the statute. We see no relevant difference where the insured is a plaintiff and seeks both a declaration of coverage and a judgment.

6. Defendant's contention that it is not responsible for attorney's fees rests on the provisions of ORS 743.792 (10), which provides for arbitration. Defendant argues that the legislature, by this statute, has provided plaintiff with a wholly adequate and inexpensive remedy for the resolution of the dispute which does not contemplate an award of attorney's fees, and, therefore, an insured should not be allowed attorney's fees in a situation where this form of relief was available to him and there was no necessity to bring the action. The statute provides:

"If any person making claim hereunder and the insurer do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this coverage, then, *in the event* the insured or the insurer elects to settle the matter by arbitration, the arbitration shall take place under the arbitration laws of the State of Oregon and any judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof provided, however, the costs to the insured of the

arbitration proceeding shall not exceed $100 and that all other costs of arbitration shall be borne by the insurer. 'Costs' as used in this provision shall not include attorney fees or expenses incurred in the production of evidence or witnesses or the making of transcripts of the arbitration proceedings. Such person and the insurer each agree to consider themselves bound and to be bound by any award made by the arbitrators pursuant to this coverage *in the event of such election* * * *." (Emphasis ours.)

It is apparent from the wording of the statute that selection of the remedy of arbitration is not mandatory but is optional, and that the statute has no application to a situation where arbitration is not elected.

The judgment for plaintiff is affirmed, and the case is remanded to the trial court for the purpose of determining a proper award for attorney's fees for the trial of the case.