Argued July 9, affirmed May 15, petition for rehearing
denied June 24, 1975

# WALLER, *Appellant, v.* ROCKY MOUNTAIN
# FIRE AND CASUALTY COMPANY, *Respondent.*

535 P2d 530

*Elton T. Lafky*, Salem, argued the cause for appellant. With him on the briefs were Lafky & MacDonald, Salem.

*Edward H. Warren*, Portland, argued the cause

for respondent. With him on the briefs were Hershiser, Mitchell & Warren, Portland.

DENECKE, J.

While riding on a motorcycle Jerry Waller was killed by an uninsured motorist. The defendant insurer had issued an automobile liability insurance policy to the plaintiff, H. E. Waller, who is the personal representative and the father of Jerry Waller. Plaintiff contends his son was covered under the uninsured motorist provision of defendant's policy and that he is entitled to recover benefits on behalf of his son. The trial court, sitting without a jury, held for the defendant, and plaintiff appeals.

In order for plaintiff to recover he must prove that his son was an insured under defendant's policy. The policy provides uninsured motorist coverage for its "insured," defined as follows: "The unqualified word 'insured' means (1) the named insured [H. E. Waller, the father and plaintiff] and, while residents of the same household, his spouse and relatives. * * *." The trial court made a finding of fact that "Jerry Waller was not a resident relative of the same household as the named insured, H. E. Waller, at the time of the accident * * *."

We treated the question of whether one was a resident of the household of a named insured as a fact issue in *Schehen v. North-West Insurance,* 258 Or 559, 484 P2d 836 (1971). In the *Schehen* case, however, we held there was insufficient evidence to submit the question of fact to the jury. The two decisions from other jurisdictions which are relied upon by the plaintiff also treat the question as one of fact. *American States Ins. Co., Western Pac. Div. v. Walker,* 26 Utah2d 161, 486 P2d 1042 (1971), and *Travelers Insurance Company v. Mixon,* 118 Ga App 31, 162

SE2d 830 (1968). We continue to regard the question as one of fact and the plaintiff does not contend to the contrary.

■ The next question is, what is the scope of our review of this question of fact? Is this proceeding in law or in equity? This is a frequent issue in litigation involving insurance coverage. If we are in equity, we review the facts de novo. If we are in law, we merely inquire into the sufficiency of the evidence to support the trial court's findings of fact.

Plaintiff filed a complaint praying for damages. Plaintiff filed a second amended complaint praying for specific performance of defendant's agreement as provided in its policy, to arbitrate its liability. Defendant filed a counterclaim stated to be a proceeding for declaratory relief seeking a declaration that Jerry Waller was not a resident of plaintiff's household at the time of Jerry Waller's death.

The case was tried without any indication whether it was believed to be in law or in equity. In its judgment order the trial court held: "Count Three of defendant's counterclaim for declaratory relief is resolved in favor of the plaintiff. Finding, as a matter of fact, that at the time of the accident, Jerry Waller was not a resident relative of the named insured's household * * *." The trial court further stated in its judgment: "IT IS HEREBY ORDERED AND DECLARED that defendant provided no coverage to Jerry Waller at the time of the injuries * * * and that as a consequence thereof, defendant is not required to arbitrate the claim."

Of the several recent decisions we have made on this issue, *Frontier Ins. v. Hartford Fire Ins.*, 262 Or 470, 499 P2d 1302 (1972), is probably the most relevant. The plaintiff filed a " 'Complaint in Equity for Declaratory Decree and Judgment,' " naming the

insurer as a defendant. Plaintiff prayed for a declaration of the rights of the parties "and for a decree reforming the insurance policy * * *." 262 Or at 475. We observed that reformation is a form of equitable relief; however, we were of the opinion that what the plaintiff sought in effect was to enforce the written policy as orally amended which was not the remedy of reformation. We, therefore, held that the proceeding should be regarded as an action at law.

Plaintiff's position in this case is similar to that of the plaintiff in *Frontier Ins. v. Hartford Fire Ins.*, supra (262 Or 470). Plaintiff is seeking declaration that Jerry Waller was covered under the policy and to enforce the policy as so interpreted. Plaintiff's intent is further revealed by his prayer for attorney fees and his contention on appeal that he is entitled to attorney fees pursuant to ORS 743.114. Attorney fees are only awardable under this statute if the insured seeks recovery on the policy. *Hardware Mut. Cas. v. Farmers Ins.*, 256 Or 599, 609-612, 474 P2d 316 (1970); *Foles v. U. S. Fidelity & Guaranty*, 259 Or 337, 345-347, 486 P2d 537 (1971).

Unless the proceedings are clearly and properly in equity we have adopted the general rule that proceedings to determine insurance coverage are to be regarded as in law. *Falk v. Sul America Terrestres*, 255 Or 246, 248, 465 P2d 714 (1970); *May v. Chicago Insurance Co.*, 260 Or 285, 292, 490 P2d 150 (1971); *Truck Ins. Exch. v. Bill Olinger Mercury*, 262 Or 8, 10-11, 495 P2d 1201 (1972).

For these reasons we hold that this proceeding is to be treated as an action at law. Our review, therefore, is limited to deciding whether there is evidence supporting the finding of the trial court that Jerry Waller was not a resident of his father's household.

The facts are largely uncontroverted and many

were stipulated. The inferences to be drawn from the evidence are in dispute.

Jerry Waller was 24 years old and unmarried. He was discharged from the Navy in September 1967. Thereafter, he worked at several jobs and lived with his parents in Salem, Oregon. In May 1968 he visited his friend Ron Austin, in McCleary, Washington, which is about 200 miles from Salem. On May 15th he started living at the home of Ron Austin's parents, in McCleary, and lived there until his death on July 20th. He returned to Salem every weekend or every other weekend. His parents had an extra bedroom where he always slept. He took his toilet articles and some of his clothes to McCleary. He left other clothes and his Navy uniform in Salem. After living in McCleary for a few weeks he brought his television set from Salem.

He did not change his mailing address from Salem. He also did not change his Oregon driver's license or car registration. On May 29th he went to work as a full-time employee of Simpson Timber Co., in McCleary. On his employment application he stated his address as Salem. On the subsequent forms he filled out for his employer he gave as his address the Austins', in McCleary.

Jerry Waller wanted at some time to return to Salem to live. He expressed a desire to work with deaf people. His mother was deaf and the Oregon Deaf School is at Salem. He talked about going to school to get training for teaching the deaf. He indicated a desire to go to a college about 25-30 miles from Salem and live at home. He picked up an application form from the Deaf School, in Salem.

Just before the fatal collision he told Ron Austin he wanted to move back to Salem in a few months. He wanted Ron to go back with him and live

at his folks' house until they could find an apartment. Ron "didn't want to do that [live with Jerry's parents]."

The death certificate stated the decedent was a resident of Washington. There was testimony this information was furnished by the plaintiff.

In *Schehen v. North-West Insurance,* supra (258 Or at 562), we construed identical language in an insurance policy. We stated:

"Although the term 'household' may be somewhat elastic, all of the definitions seem to have a common factor. They require that the members of the 'household' dwell or live together. We believe the term was intended to be so used in the present context."

In that case we held there was no evidence from which the trier of fact could find the plaintiff was a resident of the named insured's household. The facts in that case, however, were substantially different than those in the present case.

■ We hold in this case that there are reasonable inferences to be drawn from the evidence which will support the trial court's finding.

The decedent was an adult. He had not lived in Salem for over two months before his death. He had a full-time job in McCleary and physically spent at least the nights of the working week at Ron Austin's house, in McCleary. He did not plan to move back into his family's home in Salem, except perhaps on a very temporary basis, and that at an indefinite time. This evidence, together with the evidence of lesser significance, supports the inference that Jerry Waller did not "dwell or live" together with his family in Salem.

The cases from other jurisdictions relied upon by plaintiff are not contrary to our holding. In both *American States Ins. Co. v. Walker,* supra (26 Utah2d

161), and *Travelers Insurance Company v. Mixon,* supra (118 Ga App 31), the courts held the evidence was sufficient to support a finding by the trier of fact that the person was a resident of the household. Even if the evidence in those cases is believed to be comparable to the evidence in the present case, the holding in those two cases is merely that a question of fact was presented. The clear implication of both cases is that if the trier of fact had decided that the person was not a resident of the household, as the trial court did here, such a finding would have been sustained.

■ Plaintiff also contends Jerry Waller was a named insured in the policy and, therefore, entitled to the uninsured motorist coverage of the policy. The trial court made a conclusion of law that he was not.

The initial policy stated that the plaintiff, H. E. Waller, is the "named insured." The policy as initially written contained an endorsement which stated, in part, "* * * insurance under this policy shall not be in force and effect as to any motor vehicle while the driver or operator of such motor vehicle is any male who is under the age of 25 years." When his son returned from the service, Mr. Waller had his agent add a Pontiac to the vehicles insured and add his son as a new driver. An additional premium was charged for this change. An endorsement to the policy was issued by the defendant adding the Pontiac as an insured vehicle. The amended declaration continued to name H. E. Waller as the only "named insured."

We agree with the trial court that Jerry Waller was not a "named insured."

The uninsured motorist supplement provides coverage for persons who are deemed "insured." The policy provides:

"The unqualified word 'insured' means (1) the named insured and, while residents of the same

household, his spouse and relatives of either; and (2) any other person while in or upon or while entering into or alighting from (1) the insured automobile provided the actual use thereof is by or with the permission of the named insured, or (2) any other automobile which is being operated by the named insured."

All persons defined as "insured" were covered by defendant's policy except, at least for liability coverage, male drivers under 25 were not covered. To negate that exception, Jerry was added as a new driver. This addition did not make Jerry a "named insured." It removed the applicability of the young driver exception and made him an "insured" if he otherwise qualified under the definition of "insured."

1 Long, Law of Liability Insurance 3-3, § 301 (1966), states the accepted law:

"* * * Two descriptive expressions are used in the policy to designate the person covered by insurance, 'named insured' and 'insured.' Whenever the description 'named insured' is used, only the person named in the declarations of the policy is meant. Whenever the word 'insured' is used, it includes any other person who may be covered by the policy."

In *Holthe v. Iskowitz*, 31 Wash2d 533, 197 P2d 999 (1948), the Washington court held a person expressly named in the policy but not expressly designated as the "named insured" was not a named insured. A Mrs. Uhlman owned the car and was designated in the policy as the "named insured." Mrs. Uhlman did not drive and her daughter Betty did the driving. An endorsement was added stating, "NAMES OF INDIVIDUALS, OTHER THAN AFORESAID HUSBAND AND WIFE, WHO ARE RELATIVES OF AND RESIDENTS IN THE HOUSEHOLD OF THE NAMED INSURED AND WHO ARE TO BE COVERED HEREUNDER AS INSURED: Betty

Lou Uhlman, College Student, Daughter." 31 Wash2d at 538. Her daughter, Betty, permitted the defendant to drive. The defendant collided with plaintiff and sought coverage under the policy as an omnibus insured. The policy covered any person using the car "provided the actual use of the automobile is with the permission of the named Insured." 31 Wash2d at 538. The court held that although the daughter was named as an insured in the endorsement, she was an additional insured and not the named insured and, therefore, the defendant was not driving with the permission of the named insured.

In *Griffin v. State Farm,* 129 Ga App 179, 199 SE2d 101 (1973), Harland Griffin, bought a car for his daughter, Mary Elizabeth Griffin. He had the car insured under a family insurance policy which had been issued in the name of his wife, Nellie Ruth Griffin. The issue was whether Mary Elizabeth Griffin was an uninsured motorist. State Farm had the uninsured motorist coverage on the injured party and was contending that Mary Elizabeth Griffin was insured:

"State Farm contends that the amendment to the Travelers' policy which added Mary Elizabeth Griffin as a driver of the vehicle made her a named insured. The policy defines a named insured as 'any individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household.' The only person named in the amendment to the policy under Item 1 is Nellie Ruth Griffin, the spouse of Harland Griffin. Thus, there is no merit to the contention." 199 SE2d at 104.

We hold Jerry Waller was not a named insured.

■ The dissent would hold that Jerry Waller did have uninsured motorist coverage as he was "designated as a named insured." The policy did not provide for one "designated as a named insured";

however, the statute requires such a clause and, therefore, the policy should be construed as containing such clause. ORS 743.069 and 743.792(2)(a)(A).

This contention was not made by the plaintiff in his pleadings, in the trial court, or in this court. At our request the parties furnished supplemental briefs on this issue.

The dissent contends the defendant did name Jerry Waller as a designated insured. The dissent would so conclude as a matter of law. We are of the opinion that the evidence would not support a factual determination that Jerry Waller was a "designated" insured, much less a conclusion as a matter of law.

With some limitations, the usual rule of contracts that the intention of the parties governs is applicable to insurance contracts. *Ramco, Inc. v. Pacific Ins.*, 249 Or 666, 673, 439 P2d 1002 (1968). The parties did not know the statute required the policy to provide for one "designated as a named insured." Under those circumstances it seems to us that it would be very unlikely, if not impossible, to find from the evidence that the parties nevertheless intended to and did designate Jerry Waller as a named insured.

We find another contention of the dissent more troublesome; that is, that plaintiff had "reason to suppose" under the circumstances stated to the agent of defendant that Jerry Waller was a designated named insured or was designated in some other manner so as to provide uninsured motorist insurance covering him at the time of his death. We believe we correctly paraphrase this contention of the dissent by stating: If the defendant had provided for a designated named insured in its policy, as it should have, Jerry Waller would have been so designated in order to accomplish the purpose of plaintiff and his son.

From the evidence we are unable to conclude

that Jerry Waller would have been so designated. The lack of evidence probably results from this question not being in issue at the trial.

We do not know whether an additional premium is charged for adding one as a designated named insured. If so, that would have been a factor in the decision of plaintiff and his son whether to add his son as a named insured. We do not know whether the additional premium charged for uninsured motorist insurance when the Pontiac was added was charged for the additional car or because Jerry Waller was added as an insured. At the time the endorsement was written the son had uninsured motorist coverage because he was a resident relative of the household of the named insured. According to the stipulated facts, when the defendant was requested to add the endorsement the defendant was informed that Jerry Waller "would be living at home." Defendant's agent testified that "the policy was written in that manner; that he would be living at home." One of the plaintiff's principal arguments is that Jerry Waller was a resident relative at the time of his death. If this were so, it would not have been necessary to name Jerry Waller as a designated insured.

The dissent has cited one writer who has stated when it is good practice to designate a party as a named insured:

"* * * In the case of the father-son relationship referred to in subsection 19.1, supra, it would be good practice for the father, who has legal title to the vehicle, to be the 'named' insured and the son, who owns and uses the vehicle, to be the 'designated insured.' " Pretzel, Uninsured Motorists, 34-35, § 19.2 (1972).

Assuming that writer to be correct, the evidence does not reveal whether the legal title to the Pontiac was in the plaintiff father or in the son. There is no

evidence why that should make a difference but Pretzel believes it does.

The dissent suggests that if the evidence is not sufficient to decide this issue we should remand the case back to the trial court with instructions to take further evidence.

In almost all instances we will not reverse a case on an issue not presented in the trial court. *Fawver v. Allstate Ins. Co.*, 267 Or 292, 516 P2d 743 (1973). Except perhaps in very special circumstances we should not reverse and remand a case to the trial court to take evidence on an issue not raised in the trial or appellate court. The obvious reason for avoiding such a practice is that litigation must end. We do not find any special circumstances in this case.

Affirmed.

HOLMAN, J., specially concurring.

I agree with that part of the majority opinion which holds that the issue of whether the decedent was a "designated" insured was not litigated by the trial court and, therefore, we should not determine the issue on appeal. Because the case was not tried with this issue in mind, we cannot be sure that we have all the information available which would throw light upon the matter.

TONGUE, J., dissenting.

I respectfully dissent from the opinion by the majority because, in my opinion, Jerry Waller was entitled to uninsured motorist coverage as a "person designated as named insured in the schedule" of this automobile insurance policy, under policy provisions required by ORS 743.792, but which were not included in this policy.

1. *The statute and the policy provisions.*

At the time of the trial the attention of the

trial court was not called by either party to the fact that ORS 743.792(2) extended uninsured motorist coverage to not only the "named insured" and to relative "residents of the same household," as provided by the terms of the policy, but also to "any person designated as named insured in the schedule."[1] The policy in this case did not include a provision extending uninsured motorist coverage to such persons.

ORS 743.792 required, however, that every policy covered by its provisions should provide uninsured motorist coverage "no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy." Thus, if plaintiff's decedent, Jerry Waller, was a "person designated as named insured in the schedule," he was entitled to uninsured motorist benefits.

2. *The facts of this case.*

Upon the return of Jerry Waller from service in the U.S. Navy, a "change application" to the policy of his father, H. E. Waller, was prepared by the agent of the insurance company. The name "Jerry Waller" appears on that form under the designation "The following new drivers have been added." It also appears from that form that the 1962 Pontiac was added and that the additional insurance coverage was to include uninsured motorist. It was stipulated that defendant

---

[1] ORS 743.792(2) provides:

"(2) As used in this policy.

"(a) 'Insured,' when unqualified means when applied to uninsured motorist coverage:

"(A) The named insured as stated in the policy *and any person designated as named insured in the schedule* and, while residents of the same household, the spouse of any such named insured and relatives of either; provided, neither such relative nor spouse is the owner of a vehicle not described in the policy; and provided further, if the named insured as stated in the policy is other than an individual or husband and wife who are residents of the same household, the named insured shall be only a person so designated in the schedule; * * *." (Emphasis added)

was advised by that application that Jerry Waller, then an "under age 25 male driver," would be a "principal driver" of that car and that "an additional premium was charged by the defendant for these changes."

Shortly thereafter, an "endorsement" was issued, dated October 3, 1967, in the form of a new and revised "declaration." That document still listed H. E. Waller as the "named insured." This new "declaration" included a revised "schedule" describing the automobiles covered, including the automobile operated by H. E. Waller (although not designating him by name as its driver), together with the various types of coverage for that vehicle, the limits of such coverage, and the premium charged for each type of coverage. In addition, this "schedule" described the added 1962 Pontiac and the various types and limits of coverage for that vehicle, including "uninsured motorist," as well as the additional premium for each type, and the amount of the additional premiums for the uninsured motorist coverage. This "schedule," under the heading "driver class" for that automobile included the designation: "500." (Similarly, the number "200" was listed as the "driver class" for the automobile operated by H. E. Waller.)

The insurance agent testified that the number "500" in the schedule of the new endorsement was intended to refer to Jerry Waller. His testimony was as follows:

"Q Does the endorsement show not only an additional car but an additional driver? Is that how it's reflected or just explain it.

"A Well, in this endorsement, there was an additional premium charged. There was the car noted on the endorsement and there is a driver class change.

"Q What do you mean by driver class change?

"A Well, there is a different charge for dif-

ferent aged drivers and the type of use; if it's a part-time or full-time use, or if it's a business or pleasure use.

"Q   Okay. What does your change reflect?

"A   This indicates that this is a—it's a 500 driver change and that's a full-time operator.

"Q   And that's in reference to Jerry Waller?

"A   Yes, it is."

The insurance agent also testified that insurance companies have a rule that if an "under twenty-five" driver lives "permanently away from home," you have to submit an application "and that if accepted by the insurance company there would be no change of premium," but "just a change in what the records reflect as to where the individual was living."

In response to a question by the trial court whether there was "any other way that you, as agent for the company, could have submitted this to the company for treatment," and whether Jerry Waller could have been "treated" as "additional named insured," the agent answered "As an additional named insured; no, sir."

A casualty insurance underwriter for defendant testified that "generally speaking," a driver is not added by name to the policy, but that the endorsement that was issued "denotes a change of vehicles and the additional charge for a full-time, under age, male driver," as "shown by being coded 0500," but without changing the "named insured"; that the difference was that "the named insured is the individual shown on the declaration of the policy," while "a principal operator would apply in respect to the appropriate rate to be charged on a policy," i.e., "solely for reasons for rating the policy," and that there could be several "principal operators," under "one named insured."

3. *Jerry Waller was a "person designated as named insured in the schedule."*

The words "any person designated as named insured in the schedule" are unique to uninsured motorist coverage and do not appear in the liability provisions of the standard automobile insurance policy. Thus, as stated in Pretzel, Uninsured Motorists 34-35, § 19.2 (1972):

> "The phrase, 'designated insured,' appears only in UM coverage and is not found in any other portion of any standard automobile policy. Its definition is found in Section V of the policy entitled 'Additional Definitions' and reads: ' "*designated insured*" means *an individual named in the schedule under Designated Insured.*'

> "The 'schedule' is usually found on the first page of the entire policy. It is that listing of vehicles, coverages, limits of liability and premium costs that describes the coverage requested by the insured and proffered by the company. In the case of the father-son relationship referred to in subsection 19.1, supra, *it would be good practice for the father, who has legal title to the vehicle, to be the 'named insured' and the son, who owns and uses the vehicle, to be the 'designated insured.' "*
> (Emphasis added)

See also 2 Long, Law of Liability Insurance 24-16.3, § 24.07 (1974).

The "declaration" of the original policy was issued in September 1965 to H. E. Waller, decedent's father, and listed H. E. Waller as the "named insured." It included a schedule listing the vehicles covered, the types of coverage, including uninsured motorist coverage, the limits of liability and premium costs, as well as the premium paid for uninsured motorist coverage. That schedule did not list the name of Jerry Waller as a "designated insured." Indeed, that policy did not include a schedule with provision

for "designation of named insured" for purposes of uninsured motorist coverage, followed by a space to be filled in with the name of such an individual, as provided by the Standard Form Policy provisions for uninsured motorist coverage then in effect.[2]

It is clear from the evidence, however, that on October 3, 1967, H. E. Waller paid an additional premium for additional uninsured motorist coverage at the time of the acquisition of the 1962 Pontiac to be driven by his son and that defendant was informed of that fact for the purpose of preparing and issuing a proper endorsement for the additional coverage.

The endorsement issued by the defendant, including the new schedule made a part of that endorsement, although stating that an additional premium had been paid for additional uninsured motorist coverage, did not include a provision with the words: "Designated Insured ————————————," as provided by the 1966 Standard Form for uninsured motorist coverage.[3] Neither did the new endorsement include a definition of persons "insured" for the purposes of uninsured coverage so as to include "designated persons," as provided by ORS 743.792(2)(a)-(A). This new schedule also did not refer to Jerry Waller by name. It did, however, under the title "driver class" for the 1962 Pontiac include the designation "500." According to the testimony of the insurance agent that designation was intended to refer to Jerry Waller.

As also noted, the insurance agent testified that there was not "any other way" that he, as agent for the defendant, could have "treated" the matter and that he could not have "treated" Jerry Waller as an

---

[2] See Widiss, A Guide to Uninsured Motorist Coverage 305 (1973).

[3] See Widiss, *supra*, note 2 at 298.

"additional named insured." This was inaccurate in view of the fact that ORS 743.792(2)(a)(A) expressly provided for "person(s) designated as named insured in the schedule;" the fact that the standard form schedule then in effect also included such a provision; and the fact that it would have been "good practice" to so "designate" Jerry Waller under these circumstances, as stated in Pretzel, *supra.*

Under these facts and circumstances, it is my opinion that even though the name "Jerry Waller" does not appear on the "declaration" or "schedule," he was nevertheless "designated" by the code device "500," as an "insured" for the purposes of the uninsured motorist coverage under ORS 743.792(2).

In any event, it appears to be obvious that the insurance policy issued by the defendant, including the endorsement with the code device "500" was ambiguous. Under well recognized rules, such ambiguity is resolved in favor of the insured and against the insurance company. See *Chalmers v. Oregon Auto Ins. Co.,* 262 Or 504, 508-09, 500 P2d 258 (1972), and cases cited therein.

My view of a modern automobile insurance policy is that it is a contract of adhesion which all persons who own or operate automobiles are required to purchase, at least as a practical matter, and which they must purchase on a "take it or leave it" basis, including all of the complicated and seemingly contradictory provisions in large print which appear to "give" coverage, as well as the maze of provisions, exceptions, conditions and other "fine print" which "take away" much of the coverage that has appeared to have been "given."

Indeed, there is reason to support the view that unless and until the day comes that automobile policies are written in simple terms that the ordinary person

can understand, the purchaser of such a policy is entitled to the benefit of his "reasonable expectation" when he purchases such a policy and that all of the terms of the policy which are unclear or otherwise ambiguous should be construed in favor of the purchaser and to the end that his "reasonable expectation(s)" are not frustrated.

This court held, in *Borgland v. World Ins. Co.,* 211 Or 175, 181, 315 P2d 158 (1957), in referring to a policy of life insurance, and in quoting with approval from another case, that:

> "The policy should be construed according to its character and its beneficient purposes, and *in the sense in which the insured had reason to suppose it was understood.* * * *" (Emphasis added)

This rule has also been followed by this court in more recent cases.[4]

When the father of a family purchases a policy of automobile insurance he is ordinarily the "named insured." When he pays a premium for uninsured motorist coverage he has "reason to suppose" that such coverage will apply to him and to the members of his household, and regardless of whether they are injured by an uninsured motorist while driving or riding in the automobile for which the policy was purchased.

Similarly, when the father of a family purchases an automobile for an adult son or daughter, who may or may not be living as a member of the household, but may be away at college or working on a

[4] Growers Refrig Co. v. Amer. Mtr. Ins., 260 Or 207, 215, 488 P2d 1358 (1971); and Chalmers v. Oregon Auto Ins. Co., 262 Or 504, 509, 500 P2d 258 (1972). See Cimarron Ins. Co. v. Travelers Ins. Co., 224 Or 57, 64-72, 355 P2d 742 (1960); Finley v. Prudential Ins. Co., 236 Or 235, 245, 388 P2d 21 (1963); Pope v. Benefit Trust Life Ins. Co., 261 Or 397, 400, 494 P2d 420 (1972); and Bailey v. Universal Underwriters Ins., 258 Or 201, 209-10, 474 P2d 746, 482 P2d 158 (1971). See also Reed v. Commercial Ins. Co., 248 Or 152, 156, 432 P2d 691 (1967).

job, and when he undertakes to make arrangements with his insurance agent for additional coverage to protect his son or daughter, including the payment of an additional premium for uninsured motorist coverage, he has, in my view, "reason to suppose" that the uninsured motorist coverage will extend to his son or daughter while away at school or working on a job—and regardless of whether he or she is then driving or riding in that car, just as he or she would be covered under his original policy on the family car while living at home.

Indeed, coverage of an adult son or daughter in this common family situation appears to be at least one of the principal reasons for legislation such as ORS 743.792, which, for the purpose of expanding the protection of uninsured motorist coverage, requires insurance companies selling automobile insurance to provide that uninsured motorist coverage shall extend not only to (1) the "named insured" and to (2) persons residing in the same household, but also to (3) "any person designated as [a] named insured in the schedule." Indeed, this would be the proper manner for an insurance agent and company to write an endorsement for additional coverage in such a situation. See Pretzel, *supra*.

In my view, this result should follow under a policy of automobile insurance sold by an insurance company which failed to include the provision required by ORS 743.792 relating to an additional person "designated as [a] named insured," when a father has purchased an automobile for an adult son or daughter and, in arranging for insurance to cover his son or daughter, pays an additional premium for uninsured motorist coverage. This result should particularly follow, in my view, if there is anything in the new policy or endorsement which makes reference to the adult son or daughter, either by name or other-

wise, or if there are any other circumstances which satisfy the objective test to the effect that a father who purchases such additional insurance and pays an additional premium for additional UM coverage would have "reason to suppose" that such coverage would extend to his adult son or daughter to the same extent as his son or daughter would have been covered by the policy on the family car while living as a member of the family.

Under the circumstances of this case, and applying these well established rules of insurance law, I believe that plaintiff is entitled to have this court interpret the ambiguity against the insurance company which was responsible for it and in favor of recovery by the plaintiff, in accordance with his "reason to suppose" that it would be applied when he paid the additional premium for the additional uninsured motorist coverage.

4. *Contentions by the majority opinion.*

The majority opinion relies upon definitions taken from the liability portion of the automobile policies in the cases of *Holthe v. Iskowitz,* 31 Wash 2d 533, 197 P2d 999 (1948), and *Griffin v. State Farm,* 129 Ga App 179, 199 SE2d 101 (1973). Those cases, however, were not concerned with the uninsured motorist coverage definition of "insured," as stated in ORS 743.792(2), so as to include "designated" persons. The majority also quotes from 1 Long, Law of Liability Insurance 3-3, § 301 (1974). Long, however, was also discussing the definition of "insured" and "named insured" under the general liability portion of an automobile policy, and not under uninsured motorist coverage. Although the definitions discussed in these authorities are similar to the definitions contained in the policy under consideration, they are inapplicable in this case because the wording of the policy must be expanded to include "persons designated in the sched-

ule" so as to be "no less favorable" than the provisions required by ORS 743.792(2).

The majority contends that "we should not reverse and remand a case to the trial court to take evidence on an issue not raised in the trial court" except for "special circumstances," citing *Fawver v. Allstate Ins. Co.*, 267 Or 292, 516 P2d 743 (1973), and find no such "special circumstances" in this case. I do not find any reference in *Fawver* to such a rule.[⑤] Even if that is normally a proper rule, the circumstances of this case in which an insurance company doing business in Oregon failed to draft its policy in accordance with mandatory provisions of a statute enacted to protect the victims of uninsured motorist accidents are sufficient to constitute "special circumstances" within the meaning of such a rule, so as to make it proper, in my opinion, to remand this case to the trial court for the taking of additional evidence.

For all of these reasons, I must respectfully dissent.

---

[⑤] There is reference in that opinion to this court's refusal to consider an issue not raised by plaintiff, but there is no mention of the question of remanding for further evidence. Fawver v. Allstate Ins. Co., 267 Or 292, 294-95 n.2, 516 P2d 743 (1973).