Reginald H. MARTIN, Appellant
(Plaintiff Below),

v.

Donald P. LEVINSON, as Administrator
of the Estate of Sammie Lee Agnew,
Deceased; American Interinsurance Exchange; and American Underwriters,
Inc., its Attorney–in–Fact, Appellees
(Defendants Below).

No. 3–279A58.

Court of Appeals of Indiana,
Third District.

Sept. 25, 1980.
Rehearing Denied Nov. 17, 1980.

Hawk P. C. Kautz, Kappos & Kautz, Merrillville, for appellant.

Dale E. Custer, Stults, Custer, Kutansky & McClean, Gary, for appellees.

HOFFMAN, Judge.

On December 1, 1974 plaintiff–appellant Reginald H. Martin (Martin), an Ohio resident, suffered personal injuries from an automobile collision occurring in Lake County, Indiana, between his vehicle and a vehicle owned and operated by Sammie Lee Agnew, a resident of Lake County. This appeal questions the propriety of the granting of summary judgment by the trial court on Martin's two–count complaint in favor of Donald P. Levinson, administrator of Agnew's estate, and the insurance company through which Agnew carried an automobile liability policy.

A chronology of the events preceding this appeal is instrumental to an understanding thereof. Following the accident of December 1, 1974 Martin received a letter on December 17 from American Interinsurance Exchange representing American Underwriters Group, insurer of Agnew, requesting Martin to contact the company. Nothing further transpired in the matter until Martin wrote a letter to Insurer on February 26, 1976 listing his specials and requesting discussion of the case. On April 7, 1976 Martin informed Insurer that he had obtained Indiana counsel. On July 14, 1976 Martin was informed that the insurance adjuster had closed his file and the matter was now being handled by a claim's examiner for the company, who requested further information before entering into serious negotiations.

Martin filed a complaint against Agnew in Lake Circuit Court on July 15, 1976. However, at that time Agnew had been dead for about 14½ months, having died on April 30, 1975 unbeknownst to Martin. On November 10 of 1976 Martin requested issuance of alias summons, because the certified mail return receipt of his July 15 summons had not been received by the court clerk. Alias summons was issued on November 12, 1976 and also on that date Martin wrote Insurer, stating in part:

"... As I indicated during our conversation this afternoon, I shall not take default against your insured once service is perfected unless I provide you with prior notice. It is our mutual intent to examine the possibilities of settlement of this action in the interim."

The alias summons was marked "Not found, Deceased 1975" on November 17, 1976.

Insurer wrote to Martin on December 16, 1976 relating in part:

"On 11–12–76 I discussed this matter with a member of your firm. . . .

"In our discussion of this matter, it was agreed, mutually, that your office would send me a copy of the summons and complaint and also a letter waiving appearance until that time of which we have had the opportunity to discuss and negotiate on this matter.

"I asked to also receive copies of your documented specials by mail.

"I have, as of this time, not received any of this information. Would you please forward same to me in order that we may enter into negotiations to a possible settlement of this claim."

Thereafter on May 18, 1977 Martin wrote Insurer confirming a May 17 phone conversation in which he agreed not to take further action in the cause pending settlement negotiations and further stated:

"We recently have learned of the death of your insured; but we will hold off appointing an Administrator of his estate, for the purpose of litigation, pending settlement negotiations; and, of course, we hereby reserve our rights to do so, if this matter is not settled within a reasonable time."

Again, on June 17, 1977 Martin wrote Insurer detailing losses incurred from the December 1, 1974 accident and offering to settle the claim for the policy limit.

A September 30, 1977 letter from Insurer stated:

"This is in response to the above captioned matter on which we conversed on the telephone.

"At that time we discussed settlement on the claim of your client. At that time I capitulated an offer . . . . .

"You advised you were not receptive to this and rejected.

"This is to advise you that . . . all offers which have been capitulated on the claim of your client are herewith rescinded. Should you have any questions, please feel free to contact me."

Martin then requested that an administrator be appointed for the sole purpose of defending Agnew's estate from a claim for damages. Donald P. Levinson was appointed administrator by the court, substituted for Agnew in the action, and alias summons was issued and duly served upon him.

On January 17, 1978 Levinson filed a motion to dismiss an alternative motion for summary judgment. On February 1, 1978 by leave of court Martin filed Count II of his complaint directly against Insurer charging that conduct of the company amounted to waiver or estoppel to assert running of the statute of limitations as a bar to his claim. By this count Martin sought both compensatory and punitive damages.

All defendants filed a motion to dismiss an alternative motion for summary judgment on February 27, 1978. After hearing arguments on the motions the court entered the following findings and judgment, omitting formal parts:

"The Court now finds defendants' motion should be sustained. Since the Court considered matters outside the pleadings, in the nature of exhibits, attached by defendants to its motion and by plaintiff to his additional count of complaint and his brief in response to defendants' motion the Court treats defendant's motion as a Motion for Summary Judgment pursuant to Trial Rules 12(8) [sic] and 56. The Court, having considered all the pleadings, exhibits and inferences, in the light most favorable to the plaintiff, now finds that there remains no genuine issue of material fact in controversy between the parties and defendants are entitled to a judgment as a matter of law. The Court specifically finds that the accident giving rise to plaintiff's claim against Sammie Agnew occurred on December 1, 1974; that Agnew died on May [sic] 30, 1975; that plaintiff subsequently filed suit against Agnew on July 15, 1976; that the period of limitations expired before plaintiff brought his claim against the personal representative of decedent Agnew; and that the Alleged [sic] conduct of the additional defendants American Interinsurance Exchange and American Underwriters, its attorney–in–fact, did not toll the running of the period of limitations, did not waive it as a defense, and such conduct did not give rise in plaintiff of any new or additional valid claim on which relief can be granted, such as the alleged bad faith or wilful wanton conduct. The Court now grnats [sic] summary judgment to defendants and against plaintiff on his complaint."

Disposition of a case by summary judgment is only appropriate where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. To determine whether a genuine factual controversy exists, trial courts must resolve any doubt against the proponent of the motion, taking all facts properly asserted by the party opposing the motion as true. *Johnson v. Wabash Cty.* (1979), Ind.App., 391 N.E.2d 1139.

It is undisputed between the parties that a claim brought against the administrator alone was not timely brought. IC 1971, 34–1–2–2 (Burns Code Ed.) provides that actions for personal injury must be commenced within two years from the date such action accrued. Thus, Martin had from December 1, 1974 through December 1, 1976 to file his suit. The complaint against Agnew filed on July 15, 1976 necessarily failed because of Agnew's death. Yet there remained four and one half months before the two–year period expired in which to commence suit against Agnew's personal representative. This Martin failed to do. He also exceeded the 18–month extension of limitation upon the death of a party provided for in IC 1971, 34–1–2–7 (Burns Code Ed.). Notwithstanding these facts, Martin claims that the intervening conduct of Insurer caused him to modify his conduct and relieved him of the burden of complying with the statute of limitation.

It is apparent that a party may, by express agreement or through his conduct, place himself in a position where he cannot later assert the expiration of a statute of limitation as a defense.

"Equity will estop a party from setting up the statute of limitations as a defense

in an action where such party by fraud or other misconduct has prevented a party from commencing his action or induced him to delay the bringing of his action beyond the time allowed by law. The time for commencing an action governed by the general statutes of limitation may thus be extended." *Donnella, Admrx. v. Crady* (1962), 135 Ind.App. 60, at 63, 185 N.E.2d 623, at 625.

*Also see: Collins v. Dunifon et al.* (1975), 163 Ind.App. 201, 323 N.E.2d 264. It is also clear that under Indiana law a suit based on a contract theory directly against a liability insurer by an injured third party is inappropriate. *Winchell v. Aetna Life & Cas. Ins. Co.* (1979), Ind.App., 394 N.E.2d 1114: *Bennett v. Slater et al.* (1972), 154 Ind.App. 67, 289 N.E.2d 144. However, Martin argues that the conduct of the insurance company in this case gave rise to a separate cause of action directly against the Insurer for the tort of fraud and also that such conduct by the Insurer under an agency theory preserves his cause of action against Agnew's personal representative.

■ To sustain an action for fraud it must be demonstrated that a material representation of a past or existing fact was made which was untrue and known to be untrue by the party making it or else recklessly made and that another party did in fact rely on the representation and was induced thereby to act to his detriment. *Plumley v. Stanelle* (1974), 160 Ind.App. 271, 311 N.E.2d 626.

The following evidence is relied upon by Martin as evidence of fraudulent conduct by Insurer which substantiates his assertion of a waiver or estoppel to the statute of limitation defense: the letter of November 12, 1976 confirming a phone conversation in which Martin agreed not to take default against Agnew without notifying Insurer; the letter of December 16, 1976 in which Insurer indicated a desire to engage in negotiations and requesting a letter waiving appearance; the letter of May 18, 1977 confirming an agreement made by phone not to proceed with the action pending settlement negotiations; the letter of September 30, 1977 rescinding offers of settlement (evidencing negotiations continuing up until that time). Further, Martin argues that Insurer requested waiver of appearance at a time when it knew or should have known that its policy holder was deceased.

■ One fundamental question which must be resolved is whether the conduct on the part of the Insurer amounted to more than simple settlement negotiations. Conduct of the company must be of a caliber calculated to lead the other party to inaction to constitute an estoppel. As pointed out by the *Collins* court,

".  .  . The carrier's indication of a mere willingness to discuss settlement with Collins' attorney, at a time several months before the expiration of the statute of limitations, must be deemed as a matter of law insufficient to constitute the basis for any reasonable inference that the carrier would not rely upon the statute so as to mislead or lull Collins into inaction.  .  .  ." 323 N.E.2d at 267.

This was also noted by the Appellate Court of Illinois,

"The fact that an insurer negotiates with a claimant is not conduct amounting to waiver by estoppel unless the negotiations contain statements or conduct which are calculated to lull the claimant into a reasonable belief that his claim will be settled without suit. If there is evidence of such conduct which exceeds mere investigation and negotiation an issue is made for determination by the trier of facts; if not, the defense may be disposed of by the court as a matter of law." (Citations omitted) *Flagler v. Wessman* (2nd Dist. 1970), 130 Ill.App.2d 491, at 494, 263 N.E.2d 630, at 632, as cited in *Doll v. Farmers Auto. Ins. Ass'n* (3rd Dist. 1977), 54 Ill.App.3d 868, 12 Ill.Dec. 635, 370 N.E.2d 258.

Insurer argues that its conduct did not exceed the permissible limits of investiga-

tion or negotiation. It contends that neither the November 12 nor December 16 letters contained any request by Insurer asking Martin to refrain from filing suit. Insurer points out that absence of a request to settle is evidenced by the fact that Martin endeavored to file suit in July 1976 and further, that Martin's letter of May 18, 1977 expressly reserving the right to bring an action against administrator supports its position. An example of conduct held to be of a design calculated to lead toward inaction is found in *Marcum v. Richmond Auto Parts* (1971), 149 Ind.App. 120, 270 N.E.2d 884, wherein insurer's employees had told plaintiff that they would make a fair cash settlement, that they were authorized to pay for his lost wages and medical expenses, and specifically requested plaintiff not to consult an attorney, then one day following expiration of the statute of limitations stated that no settlement would be made. For further examples of conduct establishing a defense to the statute of limitations see: *McLearn v. Hill* (1931) 276 Mass. 519, 177 N.E. 617 (pursuant to defendant's request plaintiff discontinued an action timely commenced in municipal court and instituted new action in superior court where other cases arising out of same accident were pending, defendant then pleaded statute of limitations defense as to new action) and *cf.: Knight v. Lawrence* (1954) 331 Mass. 293, 118 N.E.2d 747 (conduct of adjuster for defendant's insurer preserved jury question on issue of estoppel where plaintiff was told as late as ten days before statute had run that company would take care of her and adjuster would be contacting her).

■ In the case at bar Martin was not prevented from asserting his legal rights as in *Marcum, supra.* Nor did Insurer make any promises that settlement *would* be achieved and that resorting to the courts would not be necessary. Martin's letter of November 12, 1976 stating, ". . . As I indicated during our conversation this afternoon, I shall not take default against

your insured *once service is perfected* unless I provide you with prior notice" (emphasis added), is evidence that he intended to obtain service and properly preserve his suit on the docket. He was not asked to abate such endeavor by Insurer. Thus, the appellee did nothing to cause Martin to *change* his position to his disadvantage. Insurer desired to negotiate but did not engage in actions calculated to make Martin "miss" the applicable statute of limitation. If such was the case Insurer could have asserted such defense as early as December 1, 1976; rather, it continued to negotiate toward a settlement.

■ Martin alleges that Insurer had an affirmative duty to inform him of the death of its insured. Even assuming for purposes of summary judgment that company knew or should have known of Agnew's death as asserted by Martin, there was no duty placed on Insurer to so advise Martin, and thus the element of reliance necessary to the theory of estoppel is missing. Insurer did not use such knowledge to intentionally lull Martin into inaction. While Insurer must protect the interests of its insured it is under no affirmative duty to protect the rights of injured third parties. 45 C.J.S. Insurance § 934; *Goldstein v. Bernstein* (1943) 315 Mass. 329, 52 N.E.2d 559. *Also see: Dixon v. Checchia* (1968) 249 Md. 20, 238 A.2d 247 (no estoppel for a failure to advise of insured's death when appellant was not induced by company to file after expiration of period). For silence to constitute conduct which is calculated to induce inaction there must be an imperative duty to speak as well as an opportunity to speak. *See: Collins v. Dunifon, supra,* at 267 of 323 N.E.2d and cases therein cited. Here, as in the similar case of *Morris v. Harris, Admr.* (1973), 155 Ind.App. 467, 293 N.E.2d 202, the return of summons marked "deceased" prior to the expiration of the statute of limitations put Martin on notice of the change in circumstances. The case for equity and the extraordinary remedy of estoppel are thus not compelling, even

though Insurer continued to negotiate toward settlement. Because there was no evidence at bar establishing that Insurer's conduct exceeded the bounds of mere investigation and negotiation the issue of waiver or estoppel was properly disposed of by the court as a matter of law. *Flagler v. Wessman, supra.*

Martin's contention that Insurer was an agent acting for a non–existent principal is erroneous. An agency situation does not arise from the settlement of a claim under a contract of liability insurance. *Foremost Dairies v. Campbell Coal Co.* (1938) 57 Ga.App. 500, 196 S.E. 279. When such an Insurer has the right to effect settlement of a claim for damages against an insured without authority from insured, the Insurer can effect such settlement as an independent contractor. In *Attleboro Mfg. Co. v. Frankfort Marine etc. Ins. Co.* (C.C.A.1917) 240 F. 573, decided by the United States Circuit Court of Appeals, First Circuit, the court passed on the question of the agency of the insurance company under a liability policy, deciding that the company was not the agent of the insured. The court there stated:

> "By entering into the agreements contained in the policy, the defendant [the insurance company] did not become the plaintiff's [the insured] agent in respect to the defense or settlement of the suit. It stood rather in the position of an independent contractor, for it was given the control of the defense and settlement of the suit, and was in nowise subject to the plaintiff's direction."

*Also see: Hurley v. McMillian* (1954) Tex. Civ.App., 268 S.W.2d 229 and 45 C.J.S. Insurance §§ 934–936.

Although not cited by either party it is deemed necessary to discuss the arguable application of IC 1971, 34–1–2–8 (Burns Code Ed.) and *Ware v. Waterman* (1969), 146 Ind.App. 237, 253 N.E.2d 708 due to the dissent's reliance thereon. IC 1971, 34–1–2–8 provides:

> "If, *after the commencement of an action,* the plaintiff fails therein, from any cause except negligence in the prosecution, or the action abate, or be defeated by the death of a party, or judgment be arrested or reversed on appeal, a new action may be brought within five [5] years after such determination, and be deemed a continuation of the first, for the purposes herein contemplated." (Emphasis added)

The critical language here is the underlined portion. The complaint against Agnew filed on July 15, 1976 failed because of his death. Thus, no action was commenced. Nor was the administrator for his estate substituted as a party defendant within the 18–month extension of limitation found in IC 1971, 34–1–2–7 (Burns Code Ed.).[1]

This infirmity distinguishes *Ware v. Waterman, supra,* from the instant case since there the administrator for the estate was substituted as a party defendant within the 18–month period. Inasmuch as that action was timely commenced, IC 1971, 34–1–2–8 came into play.

Because no error has been demonstrated, summary judgment in favor of Levinson and Insurer was properly entered and is hereby affirmed.

Affirmed.

STATON, J. concurs.

GARRARD, P. J., dissents with opinion.

GARRARD, Presiding Judge.

I respectfully dissent and would reverse the summary judgment.

IC 34–1–2–8 provides,

---

1. IC 1971, 34–1–2–7 provides:
   "If any person entitled to bring, or liable to, any action, shall die before the expiration of the time limited for the action, the cause of action shall survive to or against his representatives, and may be brought at any time after the expiration of the time limited within eighteen [18] months after the death of such person."

"If, after the commencement of an action, the plaintiff fails therein, from any cause except negligence in the prosecution, or the action abate, or be defeated by the death of a party, or judgment be arrested or reversed on appeal, a new action may be brought within five [5] years after such determination, and be deemed a continuation of the first, for the purposes herein contemplated."

Moreover, Trial Rule 3 provides that a civil action is commenced by filing a complaint with the court.

If, as we have often stated, statutes of limitations should be liberally construed, it is reasonable to construe this one as applying to an action properly commenced within the appropriate two (2) year period although the named defendant was in fact deceased. This action was literally "defeated by the death of a party."

Thus, the subsequent action against the estate was properly commenced since it was within the five (5) year period provided. *See Ware v. Waterman* (1969), 146 Ind.App. 237, 253 N.E.2d 708.

While I recognize that such an interpretation may open the door for litigation otherwise thought barred, it is nevertheless what the legislature has provided. In addition it satisfies the basic purpose of limitations statutes since the "defective" action was actually commenced within the appropriate statutory period. Clearly, the plaintiff did not intend to let the matter pass.

I would reverse and remand for trial.