Amy LITTLE, Appellant–Plaintiff,

v.

PROGRESSIVE INSURANCE,
Appellee–Defendant.

No. 77A04–0205–CV–219.

Court of Appeals of Indiana.

Feb. 11, 2003.

John P. Nichols, C. Joseph Anderson, Anderson & Nichols, Terre Haute, IN, Attorneys for Appellant.

John W. Hammel, Yarling & Robinson, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Amy Little appeals the trial court's grant of summary judgment to Progressive Insurance ("Progressive"). Little raises two issues on appeal, which we restate as:

1. Whether Little's failure to return a form waiving uninsured motorist coverage required Progressive to provide uninsured motorist coverage to Little as a matter of law; and

2. Whether Progressive should be equitably estopped from denying uninsured motorist coverage to Little because it sent a rejection form for uninsured and underinsured motorist coverage to Joaquin Larriba with the letter indicating that it had received Larriba's request that Little be added to Larriba's pre-existing insurance policy.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Progressive contracted with Joaquin Larriba to provide insurance coverage for Larriba's car. As the named insured on the Progressive policy, Larriba executed and delivered to Progressive a written rejection of uninsured and underinsured motorist coverages on March 31, 1999. On or about May 12, 1999, Larriba requested that Progressive add Little as a driver on his policy.

On June 8, 1999, Progressive sent a letter to Larriba indicating that it had received his request to add Little as a driver. Enclosed with the letter were a rejection form for uninsured and underinsured motorist coverage ("rejection form") and a declarations page. The declarations page indicated that Larriba's policy did not include uninsured or underinsured motorist coverage. The rejection form stated "state law requires that [uninsured and underinsured coverage] be provided to me as part of my motor vehicle liability policy unless I specifically reject these coverages." (Appellant's App. at 67.) Neither Larriba nor Little signed or returned the rejection form.

On November 27, 1999, Anthony Barnard was driving a car that rear-ended Little's car. After the accident, Little learned that Barnard was uninsured. Little filed a claim with Progressive because Barnard was uninsured, but Progressive denied her claim.

On October 2, 2001, Little filed a complaint against Barnard and Progressive. Progressive moved for judgment on the pleadings. Little filed a response with an affidavit and exhibits, which the trial court did not explicitly exclude when rendering its decision. After a hearing, the trial court granted Progressive's motion. Little filed a motion to correct error, which the trial court denied.

## DISCUSSION AND DECISION

Progressive filed for judgment on the pleadings under Indiana Trial Rule 12(C). Under Trial Rule 12(C), if the trial court does not exclude affidavits and exhibits filed by one of the parties when deciding whether to grant a motion for judgment on the pleadings, then the motion is converted to a summary judgment motion under Trial Rule 56. Ind. Trial Rule 12(C). Here, the trial court did not exclude an affidavit and exhibits attached

to the pleadings. Consequently, we review the trial court's grant of Progressive's motion under the standard of review for the grant of summary judgment contained in Trial Rule 56. *Ind. Farmers Mut. Ins. Group v. Blaskie,* 727 N.E.2d 13, 15 (Ind. Ct.App.2000).

Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R. 56(C). During our review, we do not reweigh the evidence, and we consider the facts in the light most favorable to the nonmovant. *Blaskie,* 727 N.E.2d at 15. The appellant has the burden to prove that the trial court erred when it determined that there were no issues of material fact and that the appellee was entitled to judgment as a matter of law. *Id.*

### 1. *Waiver of Coverage*

■ The first issue is whether Little's failure to return a form waiving uninsured motorist coverage required Progressive to provide that coverage to her as a matter of law. Little claims that because she did not fill out the rejection form and return it to Progressive, Progressive was required to provide uninsured motorist coverage to her under Ind.Code § 27–7–5–2. Progressive argues that because Larriba was the named insured and because he previously had rejected the uninsured motorist coverage in writing, the form sent to Little was of no legal consequence under Ind.Code § 27–7–5–2.

■ Under Ind.Code § 27–7–5–2, insurance companies are required to provide uninsured and underinsured motorist coverage with automobile liability policies that fit the definition provided by the statute, unless the coverage is rejected in writing. *See* Ind.Code Ann. § 27–7–5–2(a) (West 1993).[1] Under that statute, the "named insured" on a policy has the right to reject either uninsured or underinsured coverage or both types of coverage. *Id.* § 27–7–5–2(b). If an insured wishes to obtain uninsured or underinsured coverage after having previously rejected it in writing, the insured must request the coverage in writing. *Id.* In addition, once the insured has rejected uninsured or underinsured coverage, the insurer need not offer those forms of coverage again when a policy is renewed, even if the renewal occurs after "interim policy endorsement or amendment." *Id.*

Larriba purchased a policy from Progressive. As the named insured, Larriba rejected uninsured and underinsured motorist coverage in writing. Later, Little was added as a "listed driver" on Larriba's insurance policy with Progressive. (Appellant's App. at 13.) The declarations page that was sent to Larriba after Little was added as a driver indicated that the page was a "personal auto policy declarations page for named insured: Joaquin Larriba." (*Id.*) Nevertheless, Little claims that she should have had the right to reject uninsured and underinsured coverage just like a named insured.

In the insurance context, a "named insured" is "the person specifically designated in the policy as the one protected and, commonly, it is the person with whom the contract of insurance has been made." Black's Law Dictionary 1023 (6th ed.1990).

---

1. Effective July 1, 1999, our legislature amended Ind.Code § 27–7–5–2. *See* P.L. 233–1999, sect. 8. Because Larriba filed his waiver of uninsured motorist coverage and because Little was added to Larriba's policy prior to the effective date of the amended statute, we analyze the effect of his waiver under the language of the statute in effect at that time.

The term is not synonymous with "insured:"

> Every contract of insurance specifies an insured. The term "named insured" is not synonymous with "insured," but has a restricted meaning; it does not apply to any person other than those specified by name in the policy.

> One can only become a named insured by being named as such on the policy and not by conduct.

> In addition, policies of automobile liability insurance generally define certain other persons, commonly described by class, as additional or other insureds. The term "insured" is not limited to the named insured, but applies to anyone who is insured under the policy.

> To qualify as an "insured" under a policy of automobile insurance, parties must either be the named insured or establish that they were a driver or occupant of a covered vehicle involved in an accident.

Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 110:1 (3rd ed.1997) (hereinafter "Couch on Insurance") (emphasis added; footnote omitted).

"Named insured" is also not synonymous with "driver." For example, Couch on Insurance provides that "one listed in the policy, but only in the status of a driver of the vehicle, is not a named insured despite the fact that such person's name was physically in the policy." *Id.* Also, Couch on Insurance states that "a regular user of the vehicle, despite additional premiums charged for such use, is not given the status of a named insured where such person is not so named in the policy." *Id.* at § 110:4. Finally, Widiss's treatise on uninsured and underinsured motorist coverage provides:

> Designating an individual as a "driver" in a motor vehicle insurance policy does not mean that the person is a named insured. Although such an individual undoubtedly is covered when operating an insured vehicle, the individual does not become a "named insured" or a family member.

Widiss, Alan L., *Uninsured And Underinsured Motorist Insurance* § 33.2 (2nd ed. rev.2001).

Regarding the determination of who, in fact, is a named insured, the third edition of American Law Reports provides:

> An automobile insurance policy ordinarily contains in the "declaration" section the printed word "Insured" or, more often, the words "Named Insured," followed by a space in which a typed name or names appear. To that extent, the term "named insured" is self-defining and the language of some cases restricts the meaning of the term to names so appearing.

John Harrington, Annotation, *Who is "Named Insured" Within Meaning of Automobile Insurance Coverage*, 91 ALR3d 1280 § 2[a]; *see also id.* § 3[a] (providing citations to twenty cases from sixteen jurisdictions in which courts have construed "named insured" to include only the person designated as such).

Following this notion that "named insured" is self-defining, and keeping in mind the distinctions between a named insured and a driver or an insured, we turn to the facts of this case. After Larriba asked that Little be added to his policy, Progressive sent a declarations page to Larriba upon which Larriba's name was the only name listed under the words "named insured." (Appellant's App. at 13.) Little's name was on the declarations page; however, she was referenced only as a "listed driver." (*Id.*) These facts suggest that Little was not, in fact, a named insured on the Progressive policy.

In *Millspaugh v. Ross*, 645 N.E.2d 14 (Ind.Ct.App.1994), we considered whether a son, who was listed as a "principal driver" on the insurance policy on which his mother was the "named insured," was entitled to uninsured motorist benefits through his mother's policy. The language of the insurance contract defining "insured" in *Millspaugh* is very similar to the language in the contract defining "insured person" in Larriba's Progressive policy.[2] In addition, the definition of "you" in the *Millspaugh* contract is similar to the definition of "you" provided in Larriba's Progressive policy.[3]

Millspaugh acknowledged that he was not listed as the "named insured" but contended that because he was listed as the "principal driver" and because that term was undefined in the contract, we should construe the contract to provide coverage for him as a named insured. While holding that Millspaugh was not entitled to uninsured motorist coverage because a principal driver is not a named insured, we made the following comments:

> We do not agree that the contract here is ambiguous. The terms in the policy concerning entitlement to uninsured motorist coverage are clear and unambiguous. The person so entitled must appear as the named insured on the declaration page. That Millspaugh is listed as the principal driver, while relevant for other purposes, including the amount of premiums to be paid, does not transform him into a person qualified for compensation under the uninsured motorist provision of the policy.

\* \* \* \* \*

It is true that Mary Millspaugh requested that her son be "covered." However, requesting coverage is vastly different than requesting that the policy be placed in the names of both parties. *Millspaugh*, 645 N.E.2d at 16–17. Similarly, here, Larriba requested that Little be added as a driver on his policy. He did not request that the policy be placed in both names.

One of the cases we cited to support our holding in *Millspaugh* was *Waller v. Rocky Mountain Fire & Casualty Co.*, 272 Or. 69, 535 P.2d 530 (1975). In *Waller*, a father had a policy of insurance in which he was the named insured on the declarations page. When his son returned from the service, he asked his insurance agent to "add his son as a new driver." The

---

**2.** An "insured" in the uninsured/underinsured provisions of Millspaugh's policy was defined as:

   1.  you,
   2.  any relative
   3.  as to bodily injury only, any other person while occupying an insured automobile, and
   4.  anyone who is entitled to recover damages because of bodily injury sustained by a person described in 1. through 3. above.

*Millspaugh*, 645 N.E.2d at 16. The definition of "insured persons" in the uninsured/underinsured provisions of Larriba's policy is:

   a.  you or a relative;
   b.  any person occupying a covered vehicle; and
   c.  any person who is entitled to recover damages covered by this Part III because of

bodily injury sustained by a person described in a or b above.
Appellant's App. at 31–32.

**3.** In Millspaugh's policy, "you" was defined as:

> [T]he person or organization shown as the Named Insured in the declarations, and, if such person is an individual, also includes the individual's spouse if a resident of same household.

*Millspaugh*, 645 N.E.2d at 16. In the Progressive policy, "you" is defined as:

> [A] person shown as a named insured on the Declarations Page, and that person's spouse if residing in the same household.

Appellant's App. at 27.

insurance company issued an endorsement to the policy, and the declarations page named the father only as the named insured. The Supreme Court of Oregon, sitting *en banc*, held that the son was not a named insured. *Waller*, 272 Or. at 76–77, 535 P.2d at 534.

As in *Millspaugh* and *Waller*, the declarations page herein indicated that Larriba was the named insured and that Little was a driver. Consequently, after the addition of Little as an insured driver, Larriba alone remained the "named insured." *See Millspaugh*, 645 N.E.2d at 16–17; *Waller*, 535 P.2d at 534; *see also* Widiss, *supra*, § 33.2 ("Designating an individual as a "driver" in a motor vehicle insurance policy does not mean that the person is a named insured.").

Ind.Code § 27–7–5–2(b) gives the authority to reject the uninsured or underinsured motorist coverage only to the named insured. Because Larriba was the named insured, he was the only person who had the authority to accept or reject the uninsured and underinsured coverage offered by Progressive. *See Pafco General Ins. Co. v. Providence Washington Ins. Co.*, 587 N.E.2d 728, 730 (Ind.Ct.App.1992) (holding that because a person "was only an insured and not the named insured" on the insurance policy, he could not reject the uninsured motorist coverage), *trans. denied*. Consequently, Little's failure to fill out the rejection form was of no legal consequence under Ind.Code § 27–7–5–2.[4]

■ Nevertheless, Little argues "Progressive was obligated to offer the coverage to Amy Little as an insured to whom no previous policy had been issued." (Appellant's Br. at 4.) Little bases this argument on the language in Ind.Code § 27–7–5–2(b), which states that insurers are "required to provide the coverages described" for "newly issued or delivered policies." However, contrary to Little's argument, Progressive did not issue a policy to Little. Larriba requested that Progressive add Little as a driver on his policy. (Appellant's App. at 66.) Progressive sent a letter to Larriba indicating that it had received his request along with a declarations page indicating that it had added Little as a driver. (Appellant's App. at 66, 68.) The letter did not indicate that a new policy was issued. The Record does not suggest that Larriba went through a new application process. After the addition of Little as a listed driver, Larriba's policy with Progressive appears to have the same policy number that it had before the addition of Little as a listed driver.[5] All these facts suggest that Progressive merely amended Larriba's pre-existing policy. *See* John Alan Appleman and Jean Appleman, *Insurance Law and Practice* § 7605 (1976) ("Where the new policy number was the same as the old, the application was

4. We note that this conclusion would have been the same under the new version of Ind. Code § 27–7–5–2(b). Ind.Code Ann. § 27–7–5–2 (West supp.2000). The new version provides: "Any named insured of an automobile or motor vehicle liability policy has the right, on behalf of all other named insureds and all other insureds, in writing, to . . . reject both the uninsured . . . coverage and the underinsured . . coverage . . . or . . . either . . . alone . . . ." Consequently, under the new statute's language, Larriba's rejection of the coverage would have rejected coverage for all other insureds under the policy, including Little, regardless of whether she was a named insured or a listed driver.

5. The policy number on the declarations page sent to Larriba after Little was added as a driver was "45623027–0." (Appellant's App. at 68.) The policy number on the waiver form that Larriba signed before Little was added as a driver has as its last six digits "23027–0." (*Id.* at 47.) The first part of the policy number on the waiver form appears to have been cut off inadvertently with a hole punch.

the same, etc., the reduced policy was a continuation of the old contract in a lesser sum, and not a new contract of insurance."). Because Progressive did not issue a policy to Little, Progressive was not required to have Little sign a waiver of coverage under Ind.Code § 27–7–5–2(b).

Finally, we note that Progressive also was not required to have Larriba sign a new waiver form when his policy was amended. The Indiana Code defines "renewal" or "to renew" in the insurance context as:

> [T]he issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer insuring the same insured, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term . . . .

Ind.Code § 27–7–6–3. We have previously held that this language clearly meant that "a renewal policy is issued to replace the preceding policy governing relations between insurer and insured; it is not the first issuance of a policy." *Inman v. Farm Bureau Ins.*, 584 N.E.2d 567, 569 (Ind.Ct.App.1992), *trans. denied.*

In *Inman*, we considered the interaction of the statutory definition of "renewal" with the following language provided in Ind.Code § 27–7–5–2(b):

> Renewals of policies issued or delivered in this state which have undergone interim policy endorsement or amendment do not constitute newly issued or delivered policies for which the insurer is required to provide the coverage.

After quoting that sentence from Ind.Code § 27–7–5–2(b), we noted:

> As we have already stated, a renewal policy, as defined by IND.CODE 27–7–6–3, is a replacement policy issued at the end of a policy period, and is therefore

not the first issuance of a policy. Insurance policies, however, can undergo changes during a policy period as well as at the end of a policy period. An insured may add a new car to the policy, an insured's 16 year old may begin driving, or some other event may occur which requires amendment or endorsement during a policy period. Subsection (b) [of Ind.Code § 27–7–5–2], therefore, is nothing more than a supplement to IND.CODE 27–7–6–3 which makes clear that mid-period renewals after December 31, 1987 are to be treated the same as end-period renewals after December 31, 1987.

*Id.* In accordance with this language from *Inman*, despite the addition of Little as a listed driver on Larriba's policy, the mid-period change to Larriba's policy was still a renewal for which Progressive was not required to obtain another waiver of uninsured and underinsured motorist coverage under Ind.Code § 27–7–5–2.

Larriba rejected uninsured and underinsured motorist coverage when he originally contracted with Progressive. The addition of Little to Larriba's policy was not an event that required Progressive to offer those coverages again to Larriba. Little's status as a listed driver did not make her eligible to accept or reject uninsured motorist coverage. Consequently, the fact that Little did not sign and return the form to Progressive had no legal consequence under Ind.Code § 27–7–5–2. As there was no genuine issue of material fact regarding this issue and Progressive was entitled to judgment as a matter of law, the trial court did not err when it granted summary judgment to Progressive.

### 2. *Equitable Estoppel*

The second issue is whether Progressive should be equitably estopped from denying uninsured motorist coverage

to Little because it sent a rejection form for uninsured and underinsured motorist coverage to Larriba with the letter indicating that it had received Larriba's request that Little be added to Larriba's pre-existing insurance policy.

■ Estoppel is an equitable doctrine designed to prohibit an injustice that would occur without its application. *Levin v. Levin,* 645 N.E.2d 601, 604 (Ind.1994). Although estoppel has been variously defined, it is a concept by which one's own acts or conduct will prevent one from claiming a right to the detriment of another party who was entitled to and did rely on one's conduct. *Brown v. Branch,* 758 N.E.2d 48, 51–52 (Ind.2001). In other words, the doctrine of equitable estoppel will be invoked "if one party through his course of conduct knowingly misleads or induces another party to believe and act upon his conduct in good faith without knowledge of the facts." *Levin,* 645 N.E.2d at 604.

■ The doctrine is not limited to circumstances in which an actual false representation or concealment of existing material fact occurred. *Paramo v. Edwards,* 563 N.E.2d 595, 598–599 (Ind.1990). Consequently, a party need not prove that fraud occurred. *First Nat. Bank of Logansport v. Logan Mfg. Co., Inc.,* 577 N.E.2d 949, 954 (Ind.1991). Rather, the person's conduct must merely have been sufficient to prevent inquiry, to elude investigation, or to mislead and hinder. *Paramo,* 563 N.E.2d at 599. Whether a person's conduct was sufficient to justify the application of the doctrine of estoppel depends in large part upon the facts and circumstances of a specific case. *Liberty Nat'l Bank & Trust Co. v. Payton,* 602 N.E.2d 530, 534 (Ind.Ct.App.1992). If two parties "stand mentally on equal footing, and in no fiduciary relation," we will not protect a person who failed to exercise common

sense and judgment. *Paramo,* 563 N.E.2d at 599 (quoting *Gatling v. Newell,* 9 Ind. 572 (1857)).

In this case, Larriba received the rejection form from Progressive in an envelope that also contained a letter indicating that Progressive received Larriba's request that Little be added as a driver on his policy, and a new declarations page for Larriba's policy. The declarations page stated that "coverage is applicable only if a premium is indicated." (Appellant's App. at 68.) No premiums were indicated for uninsured or underinsured motorist coverage. (*Id.*) In addition, underneath both the terms "uninsured motorist" and "underinsured motorist" appeared the word "rejected." (*Id.*)

Even when we take these facts in the light most favorable to Little, the doctrine of equitable estoppel is not applicable. The inclusion of the rejection form did not conceal a material fact from Larriba or Little. Larriba knew or should have remembered that he had rejected uninsured motorist coverage. The declarations page clearly indicated that he and Little were not paying for Little to have uninsured motorist coverage. In addition, the declarations page explicitly indicated those forms of coverage had been rejected.

For the application of the doctrine of equitable estoppel to be appropriate, Progressive's conduct would have had to be "sufficient to prevent inquiry, to elude investigation, or to mislead and hinder." *Paramo,* 563 N.E.2d at 599. While the combination of the rejection form and the declarations page may have caused some confusion, it should have led to further inquiry by Larriba or Little, rather than prohibiting further inquiry. By merely reading the declarations page sent in the same envelope, Little would have known that she and Larriba were not purchasing uninsured motorist coverage from Pro-

gressive. This is not a situation in which Little reasonably could have been misled by Progressive's action or in which Little could have acted upon Progressive's conduct "in good faith without knowledge of the facts." *Levin*, 645 N.E.2d at 604; *see also Paramo*, 563 N.E.2d at 601 (holding that the doctrine of equitable estoppel was inapplicable because the plaintiffs failed to submit sufficient evidence to demonstrate that the defendant insurer "operated to reasonably mislead" the plaintiffs).

▮ Furthermore, the application of the doctrine of estoppel is not intended to create new rights. *Logan Mfg. Co.*, 577 N.E.2d at 954. Rather, it is to preserve rights that one party already had. *Id.* Consequently, while an insurer's conduct can waive provisions of an existing policy, equitable estoppel cannot extend coverage that does not exist. *Egnatz v. Medical Protective Co.*, 581 N.E.2d 438, 441–442 (Ind.Ct.App.1991). Application of the doctrine of equitable estoppel in this situation would require Progressive to provide a form of coverage to Little that was not purchased under Larriba's policy. We may not extend coverage to Little in this manner. *See, e.g., id.* As equitable estoppel is not applicable in this situation, the trial court did not err by granting summary judgment. *See Paramo*, 563 N.E.2d at 601.

For the foregoing reasons, we affirm the judgment of the trial court.

RILEY, J., and ROBB, J., concur.