Janice L. DAVIS, Appellant–Plaintiff,

v.

SHELTER INSURANCE COMPANIES, State Farm Insurance Companies, and Jennifer L. Culver, Appellees–Defendants.

No. 02A05–1105–CT–256.

Court of Appeals of Indiana.

Nov. 21, 2011.

Edward L. Murphy, Jr., William A. Ramsey, Murphy Ice & Koeneman, LLP, Fort Wayne, IN, Attorneys for Appellant.

Michael H. Michmerhuizen, Patrick G. Murphy, Fort Wayne, IN, Attorneys for Appellee State Farm Insurance Companies.

Robert J. Palmer, May, Oberfell, Lorber, Mishawaka, IN, Attorney for Appellee Jennifer L. Culver.

## OPINION

VAIDIK, Judge.

### Case Summary

Janice Davis appeals the trial court's decision to grant summary judgment in favor of Jennifer Culver and State Farm Insurance Company. Davis contends that there is a genuine issue of material fact as to whether State Farm's communications with her following a car accident and while she was receiving treatment were sufficient to trigger the theory of equitable estoppel and prevent State Farm from using a statute of limitations defense against Davis's claim. Finding no genuine issue of material fact, we affirm.

### Facts and Procedural History

On January 3, 2008, Davis and Culver were involved in a car accident in which Davis sustained injuries. Shelter Insurance was Davis's insurance company, and State Farm was Culver's insurance company. Davis received treatment that was paid for by Shelter. Shortly after the accident, a representative from State Farm contacted Davis to discuss the injuries she sustained. The representative informed Davis that she was not to call State Farm until her treatment was completed and she was ready to settle her claim. Appellant's App. p. 71.

On June 6, 2008, Shelter gave State Farm Davis's medical payment subrogation package. State Farm issued a draft to Shelter on June 16, 2008, to cover the medical payments and closed the case file. In November 2008, Shelter notified State Farm that Davis had resumed treatment for her injuries. Shelter also responded to an inquiry by Davis, erroneously informing her that the statute of limitations for her claim was three years instead of two.

Lisa Wellman, a State Farm representative, took over Davis's claim on November 10, 2008. On January 8, 2009, Davis spoke to Wellman over the phone. Davis said that she would provide medical documentation when she was ready to settle her claim. Wellman informed Davis that she was responsible for proving her claim, and Davis acknowledged that she was a case manager so she was familiar with the law. No discussion about the statute of limitations occurred.

In January or February 2009, Shelter contacted State Farm and informed them that Davis was still treating her injuries and that it would send a final subrogation notice when treatment was complete. Shelter also requested that State Farm stop contacting Davis because she felt like she was being harassed by their periodic phone calls. No further action was taken for over a year, and the statute of limitations on Davis's claim ran on January 3, 2010.

On March 11, 2010, Davis asked State Farm to settle her claim of $4,338.80 for

medical expenses, but she was informed that the statute of limitations had run. Davis retained counsel for the first time and filed a complaint on June 24, 2010, against Shelter and State Farm.[1] State Farm filed a motion to dismiss. Davis amended her complaint and added Culver as a defendant. State Farm filed a motion to dismiss the amended complaint. Davis's response to the motion to dismiss contained information outside of the pleadings, so the trial court treated the motion to dismiss as a motion for summary judgment. Culver also filed a motion for judgment on the pleadings.

The trial court conducted a hearing on both motions, granting summary judgment for both State Farm and Culver.

Davis now appeals.

### Discussion and Decision

Davis contends that the trial court erred by granting summary judgment in favor of State Farm and Culver and denying her motion for judgment on the pleadings. Davis argues that there is a genuine issue of material fact as to whether equitable estoppel barred the statute of limitations defense by State Farm and Culver. We disagree.

The trial court properly treated State Farm's motion to dismiss as a motion for summary judgment because Davis's reply contained matters outside of the pleadings. Indiana Trial Rule 12(B) provides that a motion to dismiss under Rule 12(B)(6) "shall" be treated as a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the trial court." Where a trial court treats a motion to dismiss as one for summary judgment, the court must grant the parties a reasonable opportunity to pres-

ent Trial Rule 56 materials. Ind. Trial Rule 12(B). A review of the record reveals that the trial court did not deprive Culver and State Farm of a reasonable opportunity to respond with Trial Rule 56 materials or prejudice them in any way.

When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269 (Ind.2009). All facts established by the designated evidence, and all reasonable inferences from them, are to be construed in favor of the nonmoving party. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind.2007).

■■■ At issue in the motion for summary judgment is whether the statute of limitations bars Davis's claim. With some exceptions not relevant here, statutes of limitations are affirmative defenses which must be pled and proven and can be waived. *See* 51 Am.Jur.2d *Limitation of Actions* § 20 (2000). Whether a statute of limitations defense is applicable is generally a question of law, but in the case of estoppel, it can be a question of fact. Ind. Code § 34–11–2–4; *see Paramo v. Edwards*, 563 N.E.2d 595, 599 (Ind.1990).

■■■ Estoppel is a judicial doctrine sounding in equity. *Brown v. Branch*, 758 N.E.2d 48, 51 (Ind.2001). Although variously defined, it is a concept by which one's own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct. *Id.* at 51–52. In

---

1. Shelter is a party on appeal under Indiana Appellate Rule 17(A) even though it was not part of the motion for summary judgment. After review of the chronological case summary, it appears that Davis's claims against Shelter are still outstanding.

order to assert equitable estoppel against an insurer, "the conduct of the insurer must be of a sufficient affirmative character to prevent inquiry or to elude investigation or to mislead and hinder." *Paramo*, 563 N.E.2d at 599; *see also Little v. Progressive Ins.*, 783 N.E.2d 307, 315 (Ind. Ct.App.2003), *trans. denied.*

This Court addressed the doctrine of equitable estoppel in *Martin v. Levinson*, 409 N.E.2d 1239 (Ind.Ct.App.1980). In *Martin*, the claimant initially filed suit for damages arising out of a car accident within the statute of limitations period. After filing suit, the claimant and the insurer had multiple conversations in which negotiations and settlements were discussed. However, when these conversations took place, the claimant was unaware that the insured was deceased, requiring him to file suit against the administrator of the deceased's estate. As a result, the claimant failed to bring suit against the proper party within the two year statute of limitations and argued that equitable estoppel should apply to allow him to file suit after the two years had elapsed. *Id.* at 1243.

In our decision, we noted that the doctrine of equitable estoppel is an "extraordinary remedy" that is not appropriate when the insurer's conduct does not "exceed[ ] the bounds of mere investigation and negotiation." *Id.* at 1245. The doctrine will apply to prevent a party from asserting a statute of limitations defense when "such party by fraud or other misconduct has prevented a party from commencing his action or induced him to delay the bringing of his action beyond the time allowed by law." *Id.* at 1243 (quoting *Donnella, Admrx. v. Crady*, 135 Ind.App. 60, 185 N.E.2d 623, 625 (1962), *trans. denied.*). Finding that the insurer was merely engaging in negotiations with the claimant, we ruled that equitable estoppel was not available to the claimant and that the in-

surer could assert the statute of limitations as an affirmative defense. *Id.* at 1244.

■ Our Supreme Court revised the application of equitable estoppel in *Paramo*, where it affirmed the trial court's granting of summary judgment in favor of the insurer. After a car accident, the claimants' attorney spoke with the insurer and agreed that it would be unwise to file suit until all of the necessary information was obtained and all efforts at settlement had been exhausted. *Id.* at 597. The ensuing inaction on the part of the claimants allowed the statute of limitations to run on the claim and led the insurer to file a motion for summary judgment. *Id.* at 596–97. In finding the insurer's conduct insufficient to rise to the level necessary to trigger equitable estoppel, the court noted, "[t]o create an equitable estoppel, the conduct of the insurer must be of a sufficient affirmative character to prevent inquiry or to elude investigation or to mislead and hinder." *Id.* at 599 (citing *Barnd v. Borst*, 431 N.E.2d 161 (Ind.Ct.App.1982)). This decision essentially eliminated fraud as a necessary element when asserting equitable estoppel, allowing the doctrine to be utilized in a wider variety of cases. Whether the facts in a particular case amount to equitable estoppel now depended on the unconscionability of the resulting advantage. *Id.* at 599.

This Court further expanded on the doctrine of equitable estoppel in *Little* by requiring the trial court to consider all of the circumstances surrounding the behavior that led to the equitable estoppel argument. 783 N.E.2d at 315. In *Little*, the insurer denied uninsured motorist coverage to a driver named on the insurance policy after the policy owner had rejected uninsured motorist coverage. *Id.* at 309. The named driver argued that adding her to the policy was akin to the issuance of a new policy that required the insurer to

once again offer uninsured motorist coverage. By sending a form for the policy holder to reject uninsured motorist coverage along with the letter indicating that the named driver had been added to the policy, the named driver argued that the insurer's actions were sufficient to lead her to believe that uninsured motorist coverage was being provided to her. *Id.* at 314.

While this Court noted that equitable estoppel "is not limited to circumstances in which an actual false representation or concealment of existing material fact occurred," *id.* at 315, we nonetheless held that equitable estoppel was not available to the named driver in this case. Whether conduct rises to the level sufficient to justify the application of equitable estoppel depends on the facts and circumstances of that particular case. *Id.* "If two parties 'stand mentally on equal footing, and in no fiduciary relation,' we will not protect a person who failed to exercise common sense and judgment." *Id.* (quoting *Paramo*, 563 N.E.2d at 599). If the named driver had read the forms that had been sent to her, she would have been aware that she was not receiving uninsured motorist coverage. Finding that the insurer did not mislead or prevent inquiry, and that instead the named driver failed to exercise her common sense, we held that equitable estoppel was not available based on all of the facts and circumstances of this particular case. *Id.* at 316.

In addition to the above-mentioned Indiana cases, other states have considered the doctrine of equitable estoppel in the context of personal injury claims, as is evidenced by the A.L.R. annotation and out-of-state citations that Davis provides. While these are not binding on this issue since there is relevant Indiana law, their assessment proves instructive to our analysis.

A review of the A.L.R. cited by Davis reveals that her reliance on the annotation is misplaced. *See* Allan E. Korpela, Annotation, *Promises to Settle or Perform as Estopping Reliance on Statute of Limitations*, 44 A.L.R.3d 482 § 2a (1972). Looking at the title, the information contained within the A.L.R. pertains to situations where there was a promise to settle or perform, and there was no such promise in this case. However, its review is helpful in surveying the law as a whole surrounding the invocation of the doctrine of equitable estoppel against an insurer. According to the A.L.R., when there has been a promise to settle or perform, any reliance on that promise by the claimant must be reasonable before equitable estoppel is available. *Id.* Additionally, like the Indiana courts have done, trial courts generally look at the context in which the promise was made, considering such factors as "the admission of liability by the defendant, statements that it is not necessary for plaintiff to hire a lawyer, advice against suing, and the general educational and economic level of the plaintiff." *Id.*

Turning to the out-of-state cases, an analysis of the relevant national case law indicates that there are certain behaviors on the part of the insured that act as triggers of equitable estoppel. A California court held in *Sumrall v. City of Cypress* that the doctrine of equitable estoppel was available to the claimant. 258 Cal.App.2d 565, 65 Cal.Rptr. 755 (1968). The insurer told the claimant to delay filing a lawsuit so that the insurance company could "settle the action without the expenses and publicity of litigation." *Id.* at 569, 65 Cal.Rptr. 755. In making its ruling, the court said, "[a]cts or conduct which wrongfully induce a party to believe an amicable adjustment of his claim will be made[ ] may create an estoppel against pleading the statute." *Id.* at 570, 65 Cal. Rptr. 755 (quoting *Industrial Indent. Co.*

*v. Industrial Accident Comm'n,* 115 Cal. App.2d 684, 252 P.2d 649, 652–53 (1953)).

An Illinois appellate court denied a claimant's argument of equitable estoppel using a similar rationale in *Foamcraft, Inc. v. First State Insurance Co.,* 238 Ill. App.3d 791, 179 Ill.Dec. 705, 606 N.E.2d 537 (1992). The court found that the parties had not discussed settlement; rather, they had merely discussed the calculation of a coinsurance penalty under an insurance policy. In holding that the insurer had not engaged in any behavior that warranted the availability of equitable estoppel to the claimant, the court pointed both to the absence of settlement talks and the lack of encouragement by the insurer that the claimant delay filing suit. The court said that "[c]ases in which an insurer's conduct is found to amount to estoppel typically involve a concession of liability of the insurer, advance payments by the insurer to the plaintiff in contemplation of the eventual settlement, and statements by the insurer which encourage the plaintiff to delay filing his action." *Id.,* 179 Ill.Dec. 705, 606 N.E.2d at 540. Finding none of that behavior present in the case, the court denied the claimant's equitable estoppel argument.

Discouraging the claimant from retaining counsel has also been held to trigger equitable estoppel, as was found in the First Circuit case of *Bergeron v. Mansour,* 152 F.2d 27 (1st Cir.1945). In *Bergeron,* the claimant relied upon statements made by the insurer in failing to file suit for her injuries stemming from a car accident within the statute of limitations period. The court found that equitable estoppel was an available argument for the claimant, noting that the insurer explicitly discouraged the claimant from obtaining counsel. While the claimant was in the hospital, the insurer told her father, "[y]ou don't need no [sic] lawyer in that case at all because the company is a reliable company and they will pay all the damages and suffering." *Id.* at 29. Finding that it would be "unconscionable" to allow the statute of limitations to run because of the behavior by the insurer, the court allowed the equitable estoppel argument. *Id.* at 30.

Similar circumstances were present in the Pennsylvania case of *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 204 A.2d 473 (1964). In *Nesbitt,* the claimant was injured in a bus accident and was visited by an insurance agent in the hospital. The agent informed the claimant that the defendant would have to pay her medical bills because of its responsibility for her injuries, evidencing both a promise of settlement and an admission of liability. Additionally, however, the court made note that the insurance agent explicitly discouraged the claimant to hire counsel to represent her, saying "why hire an attorney and pay him when we haven't refused you yet[?]" *Id.* at 475. The court held that if those statements could be proven at a fact-finding hearing, then equitable estoppel would be available to the claimant who failed to file within the statute of limitations period. *Id.* at 477.

Finally, a catch-all category has emerged, allowing a claimant to assert equitable estoppel when the insurer has engaged in otherwise egregious conduct. For example, a South Carolina case held that equitable estoppel was available when the insurer failed to respond to the claimant's inquiries about her coverage until after the statute of limitations had run. *Kleckley v. Nw. Nat'l. Cas. Co.,* 338 S.C. 131, 526 S.E.2d 218 (2000). In *Kleckley,* a slip and fall victim inquired with her insurer about her coverage for the medical bills she incurred as a result of her fall. The insurer failed to inform her that medical payments were in fact available under the

insurance policy. *Id.* at 219. Additionally, the policy required that payments be made only on the bills that were submitted within one year of the date of the accident. However, the insurer did not communicate this information to the claimant until after that year had passed. *Id.* Finding that the insurer's behavior was egregious enough to trigger equitable estoppel, the court said,

> Under South Carolina law, a defendant may be estopped from claiming the statute of limitations as a defense if the delay that otherwise would give operation to the statute has been induced by the defendant's conduct. Such inducement may consist of an express representation that the claim will be settled without litigation or conduct that suggests a lawsuit is not necessary. The defendant's conduct may also involve inducing the plaintiff either to believe that an amicable adjustment of the claim will be made without suit or to forbear exercising the right to sue. *In the instant case, Northwestern is estopped from asserting the statute of limitations defense because their lack of communication with Kleckley was the sole reason she allowed the statute of limitations to elapse.*

*Id.* at 220–21 (internal citations omitted) (emphasis added). While this specific conduct was not one of the commonly-recognized examples of behavior that other courts found sufficient to trigger equitable estoppel, the South Carolina court found it egregious enough to allow the claimant to argue equitable estoppel.

These out-of-state cases evidence the fact that trial courts around the country look to the behavior of the insurer when determining the availability of equitable estoppel. Certain actions have consistently been held to be sufficient to trigger the availability of the equitable estoppel argu-

ment. While there has not yet been a specific articulation of a test for equitable estoppel, the courts seem to share similar thoughts on the type of behavior that warrants its use.

■ This analysis of both Indiana and national case law indicates that while not explicitly stated, a two-part test has emerged to determine the availability of equitable estoppel. The first part of the test, drawing on the national case law, is to determine whether the insurer has engaged in any of the following: (1) a promise to settle; (2) discouraging the claimant from filing suit; (3) discouraging the claimant from obtaining counsel; or (4) otherwise egregious conduct. *See, e.g., Bergeron,* 152 F.2d 27; *Kleckley,* 338 S.C. 131, 526 S.E.2d 218; *Foamcraft,* 238 Ill. App.3d 791, 179 Ill.Dec. 705, 606 N.E.2d 537; *Sumrall,* 258 Cal.App.2d 565, 65 Cal. Rptr. 755; *Nesbitt,* 204 A.2d 473. If one of those behaviors is present, then the court will engage in the second part of the test by looking at the totality of the circumstances surrounding the insurer's actions. *See Little,* 783 N.E.2d at 315. Equitable estoppel will be available to the claimant when the circumstances surrounding the insurer's conduct have induced the claimant to delay timely action, *see, e.g. Kleckley,* 526 S.E.2d at 220 ("defendant may be estopped from claiming the statute of limitations as a defense if the delay that otherwise would give operation to the statute had been induced by defendant's conduct") and the claimant's reliance on the insurer's statements or actions was reasonable, *see, e.g., Little,* 783 N.E.2d at 315 ("we will not protect a person who failed to exercise common sense and judgment.").

In this case, Davis claims that the facts are sufficient to support the invocation of equitable estoppel. Based on the above-mentioned test, we disagree. State

Farm's conduct was not sufficient to trigger equitable estoppel.[2] State Farm made no promise to settle, did not discourage Davis from filing suit, did not discourage Davis from obtaining counsel, and did not engage in otherwise egregious conduct. Furthermore, State Farm made an effort to stay in continuous contact with Davis while she was receiving treatment for her injuries; it was Davis who asked for the communications to stop because she felt like she was being harassed. State Farm's only action at issue in this case was to tell Davis to contact them when she was done with her medical treatment. This conduct can hardly be considered egregious and should not have overridden Davis's common sense that she needed to actively pursue her claim with State Farm. As a result, this claim fails the first prong of the test, making equitable estoppel unavailable.

 Even if the first prong of the test had been satisfied, Davis still would not have an equitable estoppel argument based on the second prong of the test. Considering the totality of the circumstances, including the fact that Davis was not represented by counsel during her conversations with State Farm and the fact that State Farm would not suffer prejudice from the application of equitable estoppel,[3] this is not a situation in which the doctrine of equitable estoppel is appropriate. First, State Farm's conduct did not induce Davis to delay timely action. The statement from State Farm that is at the center of this case was one indicating that Davis should not contact them until she was done with treatment. This is not sufficient to constitute behavior that delays timely ac-

tion of a claim. Second, Davis's reliance on the statements made by State Farm was not reasonable; an exercise of common sense and judgment would have prompted Davis to pursue her claim for her medical bills despite the one statement made by State Farm. As a result, this case also fails the second prong of the equitable estoppel test. The trial court was therefore correct in granting summary judgment to State Farm and Culver.

Affirmed.

FRIEDLANDER, J., and DARDEN, J., concur.

---

**2.** While equitable estoppel is not available in this case, if it were, Culver argues, and Davis concedes, that the most that Davis would be able to recover would be the policy limit of Culver's State Farm policy.

**3.** Contrary to State Farm's and Culver's contention, this argument was not waived by Davis during trial.