

I N T H E

# Court of Appeals of Indiana



FILED
Jun 11 2024, 8:42 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

William R. Mishler,

*Appellant / Cross-Appellee-Plaintiff / Counterclaim Defendant*

v.

Union-North United School Corporation,

*Appellee / Cross-Appellant-Defendant / Counterclaim Plaintiff*

---

June 11, 2024

Court of Appeals Case No.
23A-MI-1019

Appeal from the St. Joseph Circuit Court

The Honorable Andre B. Gammage, Magistrate

Trial Court Cause No.
71C01-2109-MI-790

---

**Opinion by Judge Foley**
Judges Pyle and Tavitas concur.

**Foley, Judge.**

[1] William R. Mishler ("William") sued the Union-North United School Corporation ("the School"), claiming he was entitled to certain information under the Access to Public Records Act ("APRA"). The case led to competing motions on summary judgment, which the trial court resolved in favor of the School on grounds that the School complied with APRA. On appeal, we find one issue dispositive, which is whether the Claims Against Public School Act ("CAPSA") mandates dismissal of this action because William failed to comply with the CAPSA notice requirement set forth in Indiana Code chapter 34-13-3.5. Concluding that CAPSA mandates dismissal, we affirm the trial court's resolution of summary judgment but reverse as to the stated grounds, and we ultimately remand with instructions to dismiss the action without prejudice.

## Facts and Procedural History

[2] William's brother—Andrew Mishler ("Andrew")—worked for the School as a teacher. On May 10, 2021, Andrew learned that the School was conducting an "internal investigation . . . regarding inappropriate touching of female co-workers as well as inappropriate comments made to female co-workers." Appellant's App. Vol. 2 p. 111. Andrew "elected to resign," but "wanted to learn more about the allegations[.]" *Id.* at 105. He then contacted William.

[3] On May 19, 2021, William—an attorney—submitted his first APRA request ("First APRA Request"). Therein, William did not claim to be Andrew's attorney. William sought "copies of public records that were created in the

investigation of [Andrew] regarding inappropriate workplace behavior[.]" *Id.* at 114. The School denied the First APRA Request on May 21, 2021, stating that the request was "not reasonably particular" and involved "documents protected from disclosure by deliberative materials and personnel file exceptions" under APRA. *Id.* at 121.

On May 25, 2021, William submitted his second APRA request ("Second APRA Request"), which was more particular in that William sought—among other things—"[t]he [c]omplaint filed against [Andrew] regarding inappropriate touching of female co-workers as well as inappropriate comments made to female co-workers that led to the investigation and [the] compelled interview in May 2021." *Id.* at 123. At that point, William still did not allege that he was Andrew's attorney. The School denied the Second APRA Request on June 4, 2021, noting that the Second APRA Request was "similar to" the First APRA Request, except that William now "list[ed]" that he was seeking "the complaint, recordings from individuals, transcripts of interviews, and notes from interviews that relate to the investigation of Andrew" (collectively, "the Investigative File"). *Id.* at 127. The School said it was denying the Second APRA Request for the same reasons it denied the First APRA Request, i.e., because William sought "documents protected from disclosure by the deliberative materials and personnel file exceptions," and the request was "not reasonably particular." *Id.* at 129.

On July 1, 2021, William filed a formal complaint with the Public Access Counselor ("PAC") alleging that the "documents and records [sought] do not

fall within the exemptions that the public agency claims." *Id.* at 131. The PAC responded by written letter on September 13, 2021. The PAC noted that it "immediately forwarded the complaint to [the School] upon receipt" thereof, and was including a copy of the School's response. *Id.* at 133. The PAC opined that William was not entitled to Andrew's personnel file because William had "never indicated" that he was "in an attorney-client relationship" with Andrew. *Id.* The PAC reasoned that, if there was any indication that William "was acting in a representative capacity of Andrew, he would have been entitled to disclosure of the documents" under Indiana law. *Id.* at 135.

[6] On September 15, 2021—two days after the PAC issued its opinion—William submitted a third APRA request ("Third APRA Request"). Therein, William requested the Investigative File and specified he was "now representing Andrew[.]" *Id.* at 137.

[7] On September 29, 2021—before the School responded to the Third APRA Request—William sued the School. In his complaint, William alleged that, "[d]espite the clear command" of APRA and "the opinion of the [PAC]," the School "refuse[d] to provide public records containing basic information involved in the investigation of Andrew[.]" *Id.* at 19. William requested a declaratory judgment that the Investigative File consisted of "public records as defined by . . . APRA" that were "not exempt from disclosure[.]" *Id.* at 22. William also requested an order directing the School to provide the Investigative File. Additionally, William sought an award of attorney's fees.

[8] The School responded to the Third APRA Request on October 27, 2021. The School noted that, because William indicated that he was representing Andrew, the School was enclosing a copy of Andrew's personnel file. However, the School pointed out that the personnel file did not contain the Investigative File because "no disciplinary action was ultimately taken against Andrew[.]" *Id.* at 141. The School stated that, to the extent William sought "information not held within Andrew['s] personnel file," the Investigative File was "protected from disclosure" due to "the deliberative materials exception, the attorney-client and work product privileges, federal law, and public policy." *Id.* at 142.

[9] On November 19, 2021, the School filed two counterclaims. In Count I, the School sought a declaratory judgment stating that the School was "not required to produce the Investigative File" in response to the Third APRA Request. *Id.* at 37. In Count II, the School requested an award of attorney's fees.

[10] On April 14, 2022, the School moved for partial summary judgment. One of the School's contentions was that "before [William] fil[ed] th[e] action," he failed to comply with a statutory prerequisite set forth in [CAPSA], which meant "th[e] case must be dismissed on that basis." *Id.* at 44. William filed a competing motion for summary judgment on August 17, 2022, seeking an order requiring the School to produce the Investigative File. In a memorandum, William addressed the CAPSA issue. He claimed the School "waived its right to dismiss the claim under CAPSA by carrying on litigation into summary judgment," asserting that CAPSA "allows the [S]chool to move to dismiss claims without prejudice if its requirements are not met," but that "CAPSA

does not serve as grounds for summary judgment[.]" *Id.* at 95. He alternatively argued that "[a]n APRA request inherently fulfills CAPSA because every APRA request is, definitionally, notice of the law in question (APRA itself) and a proposed remedy (provide the documents)." *Id.* at 96 (emphasis removed).

[11] On January 30, 2023, the trial court held a hearing on summary judgment. Thereafter, the court entered a written order granting the School's motion for partial summary judgment and denying William's motion for summary judgment. The trial court also directed entry of a final, appealable judgment pursuant to Trial Rule 54(B). In its written order, the trial court determined that William substantially complied with CAPSA in that William "notified [the School] of the alleged violation of law via multiple APRA requests and [the] PAC complaint" and "included a specific request for relief that [the School] had an adequate opportunity to address." *Id.* at 11. As for the merits, the trial court concluded that the School was entitled to summary judgment because APRA did not mandate disclosure of the Investigative File. William now appeals, arguing he is instead entitled to summary judgment on the merits. The School cross-appeals, maintaining that CAPSA mandates dismissal of the lawsuit.

## Discussion and Decision

## I. Standard of Review

[12] The parties appeal the trial court's ruling on summary judgment. On appeal from summary judgment, we "stand in the shoes of the trial court," conducting de novo review. *Wilson v. Anonymous Defendant 1*, 183 N.E.3d 289, 293 (Ind.

2022) (quoting *Burton v. Benner*, 140 N.E.3d 848, 851 (Ind. 2020)).  Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Ind. Trial Rule 56(C).  In examining the designated evidence for a factual dispute, we "draw all reasonable inferences in favor of the non-moving party."  *Wilson*, 183 N.E.3d at 293.  To the extent summary judgment turns on a disputed question of law—such as the meaning of a statute—we owe no deference to the trial court's interpretation of the law. *See generally, e.g.*, *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 185 (Ind. 2011).  Rather, we interpret statutes de novo.  *Id.*  In interpreting a statute, we first determine whether the statute is "clear and unambiguous."  *WEOC, Inc. v. Niebauer*, 226 N.E.3d 771, 777 (Ind. 2024).  "If so, we interpret the statute 'consistent with its plain meaning, by giving effect to' both what it says and does not say."  *Id.* (quoting *KS&E Sports v. Runnels*, 72 N.E.3d 892, 907 (Ind. 2017)).  Moreover, "[w]e presume the General Assembly 'intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals.'"  *Spells v. State*, 225 N.E.3d 767, 772 (Ind. 2024) (quoting *Town of Linden v. Birge*, 204 N.E.3d 229, 237 (Ind. 2023)).

## II. CAPSA

[13]     The School presents a threshold issue in its cross-appeal.  That is, we are asked to determine whether the trial court should have dismissed the complaint— rather than resolve summary judgment on the merits—because William failed to comply with CAPSA, which is relatively recent legislation applicable to

nearly all claims against a public school. *See* I.C. § 34-13-3.5-1 (exempting limited types of civil actions and administrative proceedings).[1] CAPSA states:

> An individual or entity may not initiate a civil action or an administrative proceeding against a public school, unless the individual or entity submits a written notice to the public school . . . that notifies the public school . . . of the alleged violation of law and indicates a proposed remedy.

I.C. § 34-13-3.5-4. "A proposed remedy must . . . (1) [p]rovide the public school with a specific request for relief" and "(2) [a]llow the public school to offer the individual . . . the relief requested . . . before the individual or entity initiates a civil action" against the school. I.C. § 34-13-3.5-5. Moreover, CAPSA contemplates settlement negotiations, stating that, upon receiving notice, the school may "[r]emedy the alleged violation" or "[m]ake a written offer to the individual or entity to resolve the dispute." I.C. § 34-13-3.5-6. Our legislature also specified that CAPSA "may not be construed to restrict or limit the rights, procedures, or remedies available to an individual or entity under: (1) the federal or state Constitution; or (2) another federal law." I.C. § 34-13-3.5-2.

[14] This case involves the interpretation of Indiana Code Section 34-13-3.5-7, titled "Failure to submit notice." There, our legislature set forth a consequence for failing to comply with CAPSA. *See* I.C. § 34-13-3.5-7. That is, our legislature directed that "[i]f an individual or entity does not submit the notice described in

---

[1] William does not dispute that CAPSA applies to his APRA claim.

section 4 of this chapter to a public school before initiating a civil action or an administrative proceeding, a court, administrative law judge, or hearing officer *shall dismiss* the action without prejudice." *Id.* (emphasis added). Our legislature typically uses the word "shall" to express a mandate. *See, e.g., In re R.P.*, 949 N.E.2d 395, 399–400 (Ind. Ct. App. 2011) (collecting cases involving the phrase "shall dismiss" in a statute related to the timeliness of CHINS proceedings). At times, we have been willing to read "shall" as having the same meaning as "may," i.e., to create a discretionary power rather than an absolute mandate. *See generally id.* Yet, we do so only in limited instances where the discretionary meaning is consistent with legislative intent. *See id.* Indeed, that nontraditional reading of "shall" is supported only if "the statute fails to specify adverse consequences, the provision does not go to the essence of the statutory purpose, and a mandatory construction would thwart the legislative purpose." *Id.* (quoting *Parmeter v. Cass Cnty. Dep't of Child Servs.*, 878 N.E.2d 444, 448 (Ind. Ct. App. 2007), *superseded by statute*). In short, "shall" means "shall," unless that reading defeats the intent of the legislature. *See id.*

## A. Waiver

[15] William claims the School waived any CAPSA defense. He characterizes CAPSA as an affirmative defense and points out that a litigant generally must assert an affirmative defense in a responsive pleading. *See* Ind. Trial Rule 12(B). We note, however, that a plaintiff's failure to satisfy prerequisites to filing suit can "subject the complaint to dismissal for failure to state a claim" upon which relief can be granted. *Assocs. Inv. Co. v. Claeys*, 533 N.E.2d 1248,

1251 (Ind. Ct. App. 1989), *trans. denied*. That defense need not be asserted at the pleading stage. T.R. 12(H)(2) ("A defense of failure to state a claim upon which relief can be granted . . . may be made . . . at the trial on the merits.").

[16] William argues that "Indiana courts strictly construe notice requirements derogating a party's claims." Reply Br. p. 12. According to William, CAPSA is merely a "pre-suit notice law" that functions like the Indiana Tort Claims Act ("the ITCA"), which requires timely notice before filing a lawsuit against certain governmental entities. *Id.* at 12. He points out that, under the ITCA, "defendants forfeit[] the notice defense if they do not raise it in a responsive pleading." *Id.* (citing *Schoettmer v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013)). William argues that "[n]othing about CAPSA suggests treating it differently from other notice statutes." *Id.* William adds that "CAPSA should not function as a parachute when the case goes wrong for a public school." *Id.* He argues that "CAPSA merely requires specific notice with one express remedy that the School never requested" and that, by litigating "into summary judgment, the School waived its argument that CAPSA requires dismissal." *Id.*

[17] We disagree with William's characterization of CAPSA as a "pre-suit notice law" parallel to the ITCA. *Id.* As the Indiana Supreme Court has explained, the ITCA notice requirement is "intended to ensure that government entities have the opportunity to investigate the incident giving rise to the claim and prepare a defense." *Schoettmer*, 992 N.E.2d at 706. Our Supreme Court has described the ITCA notice requirement as a "statute of limitations," in that the ITCA requires notice within 180 days of the alleged loss. *Id.* at 708; *see* I.C. §

34-13-3-8 (generally providing that "a claim against a political subdivision is barred unless notice is filed . . . within one hundred eighty (180) days after the loss occurs"). A defense based on a statute of limitations is generally subject to waiver. *Cf. Davis v. Shelter Ins. Cos.*, 957 N.E.2d 995, 997 (Ind. Ct. App. 2011) ("With some exceptions not relevant here, statutes of limitations are affirmative defenses which must be pled and proven and can be waived." (citing 51 Am. Jur. 2d *Limitations of Actions* § 20 (2000))). Thus, based on the structure of the ITCA, it makes sense that a defendant can waive the ITCA notice requirement.

[18] In adopting CAPSA, our legislature did not follow the roadmap of the ITCA. Notably, our legislature declined to establish a statute of limitations. Instead, our legislature provided that a court "shall dismiss" procedurally improper claims. I.C. § 34-13-3.5-7. Furthermore, our legislature went further than the ITCA in designing a framework for negotiations. Those processes—specific to claims against public schools—protect public resources set aside for education. Indeed, with CAPSA, our legislature mandated that would-be litigants not only notify a school of a potential suit, but also propose a specific remedy that would avoid litigation. *See* I.C. §§ 34-13-3.5-4, -5. Furthermore, in addition to requiring that the public school receive "a specific request for relief," CAPSA requires that the school have time to formulate a response to the request, ensuring that the school be "[a]llow[ed] . . . to offer the individual or entity the relief requested . . . before the individual or entity initiates a civil action . . . against the public school." I.C. § 34-13-3.5-5. Our legislature also contemplated that the correspondence might spur additional negotiations prior

to any litigation, specifying that a school may "[r]emedy the alleged violation or violations" or "[m]ake a written offer to the individual or entity to resolve the dispute." I.C. § 34-13-3.5-6. In contrast, although the ITCA requires notice that includes "the amount of the damages sought," I.C. § 34-13-3-10, the ITCA does not directly contemplate further correspondence, instead providing that "[a] claim is [deemed] denied if the governmental entity fails to approve the claim in its entirety within ninety (90) days, unless the parties have reached a settlement before the expiration of that period," I.C. § 34-13-3-11. Further, the ITCA does not contain a provision specifically directing a trial court to dismiss a procedurally premature complaint without prejudice. Instead, the ITCA specifies that a claim is untimely if the plaintiff failed to provide "notice . . . within one hundred eighty (180) days after the loss occurs." I.C. § 34-13-3-8.

[19] By adopting the specific pre-litigation process set forth in CAPSA, our legislature ensured that schools would have a meaningful opportunity to weigh the costs of litigation against the costs of providing the proposed remedy. *See generally* Ind. Code ch. 34-13-3.5. Moreover, by mandating dismissal as an enforcement mechanism, our legislature ensured that public schools would not begin accruing litigation costs before having the opportunity to consider a settlement offer. *See id.* Therefore, the structure of CAPSA indicates that our legislature intended to funnel all prospective claims through the pre-litigation processes provided in the statutory scheme.

[20] For the foregoing reasons, we are not persuaded that CAPSA functions like the ITCA's pre-suit notice requirement rather than as a firm procedural prerequisite

to the filing of a lawsuit. *Cf. Claeys*, 533 N.E.2d at 1251 ("[O]ne who seeks the benefit of a statutory proceedings must comply with all procedural terms of the statute, failure to comply with such niceties will subject the complaint to dismissal for failure to state a claim[.]" (quoting *In re Adoption of H.S.*, 483 N.E.2d 777, 780 (Ind. Ct. App. 1989))). And we are especially mindful that our legislature—despite having other options—chose to mandate dismissal when a plaintiff fails to comply with CAPSA. *See* I.C. § 34-13-3.5-7. All in all, we conclude that the School timely raised the CAPSA defense. *Cf.* T.R. 12(H)(2) (specifying that "[a] defense of failure to state a claim upon which relief can be granted" need not be raised as an affirmative defense in the pleadings and "may be made" for the first time "at the trial on the merits").

## B. Compliance

[21]   William asserts that he complied with CAPSA, so the complaint is not subject to dismissal.[2] William points out he submitted three APRA requests, which he claims "inherently fulfill[ed] CAPSA[.]" Appellant's Reply Br. p. 14. He asserts that an APRA request "automatically notice[s] the law at issue (APRA) and [sets forth] a proposed remedy (provide the records as identified)." *Id.*

---

[2] In addressing this issue, the School cites a Court of Appeals opinion that was vacated through the grant of transfer. *See* Appellee's Br. p. 52 (citing *Smith v. Franklin Twp. Cmty. Sch. Corp.*, 136 N.E.3d 615, 616 (Ind. Ct. App. 2019), *trans. granted*, 151 N.E.3d 271 (Ind. 2020)). This citation was improper, and we do not consider the vacated opinion. *See* Ind. Appellate Rule 58(A) (specifying that, except for limited circumstances that do not apply here, "[i]f transfer is granted, the opinion or memorandum decision of the Court of Appeals shall be automatically vacated[.]"); *see also* Ind. App. R. 22 (requiring adherence to the Bluebook system of citation and specifying that "[d]esignation of disposition of petitions for transfer shall be included" in case citations).

[22] We are unconvinced that submitting an APRA request is tantamount to giving notice of impending litigation—especially in this case, where William specified in each APRA request that "[t]he request [was] not made in any anticipation . . . of any litigation." Appellant's App. Vol. 2 pp. 115, 125, 139. Further, we cannot say that an APRA request inherently satisfies the CAPSA notice requirement in that CAPSA requires written notice that specifically contains a "proposed remedy" for an "alleged violation of law," I.C. § 34-13-3.5-4, but APRA liberally contemplates even oral requests for public records, requiring only that the records be "identifie[d] with reasonable particularity," I.C. § 5-14-3-3(a) (allowing an agency to exercise "discretion" in whether to require a written APRA request). Moreover, the CAPSA process is designed to facilitate settlement by giving schools time to offer the requested relief before being forced to accrue litigation costs. *See* I.C. § 34-13-3.5-5 (specifying that the school must be "[a]llow[ed] . . . to offer the individual or entity the relief requested . . . before the individual or entity initiates a civil action . . . against" the school). However, in this case, William filed suit before receiving a response to the Third APRA Request, wherein William finally asserted that he was "now representing Andrew[.]" Appellant's App. Vol. 2 at 137. Thus, under the circumstances, we cannot say William complied with CAPSA.[3]

---

[3] William does not claim he substantially complied with the CAPSA requirement. In any case, we note that statutory noncompliance "is sometimes excused where the plaintiff has substantially complied with [the requirement]." *Lowe v. N. Ind. Commuter Transp. Dist.*, 177 N.E.3d 796, 801 (Ind. 2021) (quoting *City of Indianapolis v. Cox*, 20 N.E.3d 201, 208 n.4 (Ind. Ct. App. 2014)). In light of the public policy animating the

The consequence of noncompliance with CAPSA is plain. That is: "If an individual or entity does not submit the notice described in section 4 of this chapter to a public school before initiating a civil action[,] . . . a court . . . shall dismiss the action without prejudice." Ind. Code § 34-13-3.5-7. Thus, having concluded that William did not comply with the CAPSA notice requirement, we affirm the trial court's rulings on summary judgment, reverse the grounds underlying those rulings, and remand to the trial court with instructions to dismiss the action without prejudice under Indiana Code section 34-13-3.5-7.

Affirmed in part, reversed in part, and remanded.

Pyle, J., and Tavitas, J., concur.

ATTORNEYS FOR APPELLANT

Jeffrey D. Claflin
Joshua S. Tatum
Kyle D. Smith
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Jonathan L. Mayes
E. Timothy DeLaney
Philip R. Zimmerly
Tyler J. Moorhead
Bose McKinney & Evans LLP
Indianapolis, Indiana

---

CAPSA processes, we cannot say William substantially complied when he assured the School the requests were not in anticipation of litigation, and sued before the School responded to the Third APRA Request.